## THE WESTERN TRANSPORTATION COMPANY *vs.* MARSHALL and others.

Where the owner voluntarily delivers the possession of merchandise to a vendee, subsequent *bona fide* purchasers from such vendee, and those incurring liabilities and making advances on the faith of such possession, or standing in the relation of *bona fide* purchasers, are entitled to protection against the claims of the former owner, although the sale be conditional and the purchase price has not been paid.

So, also, evidence or indicia of the ownership of merchandise, in writing, transferred by assignment or delivery, as the nature of the instrument or usage may require, may be sufficient evidence of the sale and delivery of merchandise.

A quantity of grain was delivered by the plaintiffs, from a canal boat, on board a vessel, at the port of New York, for the account of M. & R. as purchasers, to be paid for by them in cash, on delivery. A measuring officer measured the grain as it was put on board the vessel. The plaintiffs' agent, on receiving from the measurer his certificate of quantity, and the "half bill" for measuring the grain, sent them, together with the plaintiffs' own bill for the price of the grain, to the purchasers, M. & R., who sent back their check for the amount, which was not paid. A custom existed in the city of New York, at the time, whereby the holder of the "half bill" of the measurer of grain shipped for transportation is entitled to a bill of lading for the grain mentioned therein, on the production of such "half bill" to the agent or owner of the vessel. M. & R. presented the measurer's "half bill" to the owners of the vessel, and obtained a bill of lading, in their own names, which they assigned to M. & Sons, as collateral security for an advance of money. *Held* that there was a voluntary delivery of the grain, by the vendors, to M. & R., although the price had not been paid; and that M. & R. became the possessors thereof in such a manner that all persons dealing with them respecting the grain, in good faith, were entitled to be protected.

THIS action was for the recovery of the possession of a quantity of wheat shipped on board the ship Great Western, at the city of New York, by the defendants Meyer & Ree, in September, 1857. The defendant Marshall was sued as the owner of the ship, and the defendant Furber as master. The defendants Mathew Morgan and Henry Morgan were, by order of the court, before issue joined, added as parties defendant, being the holders of the bills of lading for the wheat in controversy, the same having been transferred to

them as security for advances made thereon in good faith, before the commencement of this action.

The leading facts established at the trial (before Justice CLERKE and a jury, November 21, 1859,) were as follows: The plaintiffs, who do business at Buffalo, N. Y., as common carriers, consigned the wheat in question, being a cargo of 4000 bushels, per boat "Worthington," to the firm of Tuttle, Cutting & Co., produce commission merchants in the city of New York. The boat arrived at New York on September 9th or 10th, 1857. Tuttle, Cutting & Co. sold the cargo, on its arrival, to Meyer & Ree, who were large shippers of grain to London and Liverpool, and who were then in good commercial credit and standing. The sale was made through William G. Lord, broker for Meyer & Ree. The sale was made by sample, at the Corn Exchange, in the ordinary way, at the price of $1.35 per bushel; nothing was said about terms, but it was understood to be cash on delivery, in the usual course of the trade. The sample was delivered to the measurer, whose duty, according to the usage of the trade, is to measure the wheat and see if it corresponds with the sample, and make his returns in writing to the seller. Meyer & Ree, through their broker, engaged freight for the wheat at the office of C. H. Marshall & Co., agents of the ship, on the 9th September, 1857; on the 10th the boat was ordered along side of the ship by the plaintiffs' agent, for shipment of the wheat on account of Meyer & Ree. The measurer went on board the boat on the 11th of September, and measured the wheat into the ship. The entire cargo, as shipped, amounted to 3964$\frac{23}{100}$ bushels. The measurer, in accordance with the usual custom, then made out duplicate returns, each stating the result of the measurement as to quantity; one stating the entire charge for measuring, and the other one half of such charge, and each stating the entire charge for screening. These returns are called, in the trade, "whole bills" and "half bills." They are both sent to the seller. The buyer pays one half of the measuring and the whole of

the screening, and the ordinary course is for the seller to retain the whole bill or return, and send the half bill or return to the buyer, with the bill for the wheat. The possession by the buyer of the half bill or return, enables him to procure a bill of lading, which is issued on the production and surrender of such measurer's return. The duplicate returns in this case were delivered by the measurer to Tuttle, Cutting & Co., September 12, 1857. They made out a bill to Meyer & Ree, as follows:

*New York, Sept.* 10, 1857.

Messrs. Meyer & Ree,

Bought of Tuttle, Cutting & Co., Produce and Commission Merchants, 117 Broad street.

(Cash.)

| | |
|---|---|
| 3964$\frac{23}{100}$ bushels wheat, at $1.35, . . . . | $5,351 92 |
| $\frac{1}{2}$ meas., . . . . . . . . . . . . . | 10 20 |
| Scg., . . . . . . . . . . . . . | 6 55 |
| | $5,368. 67 |

This bill was sent to Meyer & Ree on the 12th of September, 1857, together with the measurer's returns pinned to the bill. This was the usual course of dealing between Tuttle, Cutting & Co. and Meyer & Ree. Meyer & Ree on the same day filled out bills of lading according to the measurer's returns, and sent them with the measurer's returns to the office of C. H. Marshall & Co., and there surrendered the returns and procured bills of lading, in the ordinary course of business. Meyer & Ree then, on the same day, drew their drafts or bills of exchange on Warbury, Azmyr & Co., their correspondents in London, for £1175, attached to and upon the security of the bills of lading for the 1261 bags of wheat in question, and other like drafts or bills for £8000, attached to and upon the security of the bill of lading for the 338 bushels in bulk in the middle bin, and other wheat in bulk, and procured advances in cash from Matthew Morgan & Sons to the amount of $15,000 on the first mentioned bill of

lading, and from Dennistoun, Wood & Co. to the amount of £8000 on the last mentioned bill of lading. The giving of the bills of lading by C. H. Marshall & Co., and the making of the advances by Morgan, and Dennistoun, Wood & Co., were all on the 12th of September, 1857, and all in the usual course of business, without any notice of any claim on the part of the plaintiffs or any other person. Tuttle, Cutting & Co. did not send to Meyer & Ree for payment of the bill for the wheat until the 14th September. It is the custom of the trade to leave the bill a day or two, and then send for the money. On the 15th September, the bill being still unpaid, they sent again, and Meyer & Ree then paid the bill by their check on the Merchants' Bank, dated September 15, 1857, payable to the order of Tuttle, Cutting & Co., for $5368.67, and the following receipt was given: "Received, New York, September 15, 1857, from Messrs. Meyer & Ree, fifty-three hundred and sixty-eight $\frac{67}{100}$ dollars, in full for bill of wheat, of September 10, 1857. TUTTLE, CUTTING & Co.

$5368.67. Thomas Glover."

This was also according to the usual course of dealing between the parties. Similar transactions in June, 1857, and July, 1857, had been settled in the same way and by similar receipts. Up to this time Meyer & Ree were in good credit. On the 15th September, 1857, by the steamer Persia, which arrived on that day, they received advices that their drafts drawn previously upon their correspondents in London had been dishonored; and, in consequence of these advices, they stopped payment, and the check given by them to Tuttle, Cutting & Co. was returned unpaid. Tuttle, Cutting & Co. on the next day (September 16, 1857) commenced this action, in the name of the Western Transportation Company, for the recovery of the possession of the wheat. The ship Great Western was then loaded and ready for sea; she had been hauled out into the stream. The wheat in question was in the middle of the vessel and the hatches down. No offer of indemnity, nor to pay expenses of unloading, was made by

the plaintiffs. The wheat was all delivered in Liverpool by the master of the ship, in pursuance of the bills of lading. The drafts drawn against it, and held by Messrs. Morgan, and Dennistoun, Wood & Co., were not accepted, and the wheat was sold. The proceeds did not cover the drafts. The plaintiffs gave evidence to show contemporaneous purchases and shipments of grain by Meyer & Ree, which were paid for by their checks on the 15th September, 1857, in respect to all of which it appeared that all the grain had been bought for foreign shipment; that the parties selling the grain had, on rendering their bills for the purchases, respectively delivered to Meyer & Ree the measurer's returns, which enabled them to procure bills of lading for the wheat shipped therein, from the masters of the different vessels on which it was laden, and to procure advances in cash on the faith and pledge of such bills of lading, with their drafts attached.

At the close of the evidence the complaint was dismissed as to the defendants Marshall, Furber and Morgans. The plaintiffs excepted, and the jury, under the direction of the court, found a verdict in favor of the plaintiffs against the defendants Meyer & Ree for the value of the property, $5368.67, and assessed their damages for the detention at $827.81. The exceptions were directed to be heard, in the first instance, at the general term. Judgment entered accordingly.

*John Hubbell*, for the plaintiffs.

*Wm. A. Butler*, for the defendants Marshall & Co.

*Joseph H. Choate*, for the defendants Morgan & Sons.

*By the Court*, LEONARD, J. Where the owner voluntarily delivers the possession of merchandise to a vendee, subsequent bona fide purchasers from such vendee, and those incurring liabilities and making advances on the faith of such possession, or standing in the relation of bona fide purchas-

ers, are entitled to protection against the claims of the former owner, although the sale be conditional and the purchase price has not been paid.

So also evidence or indicia of the ownership of merchandise in writing, transferred by assignment or delivery, as the nature of the instrument or usage may require, may be sufficient evidence of the sale and delivery of merchandise.

A custom existed in the city of New York at the time of the transaction in question here, undisputed so far as the evidence shows, whereby the holder of the half bill (so called) of the measurer or officer who has measured grain shipped on board of a vessel for transportation, is entitled to a bill of lading for the grain, mentioned in such half bill, on its production to the agent or owner of the vessel.

In the present case, a large amount of grain had been delivered by the plaintiffs, or their agents, from a canal boat, on board a vessel at the port of New York, belonging to the defendants Marshall & Co., or for which they were the agents, for the account of Meyer & Ree as purchasers, to be paid for in cash, on delivery, and a measuring officer had been employed, and had measured and screened the grain as it had been put on ship board from the canal boat. The measurer had also delivered his bill and the half bill to the sellers for measuring and screening the grain, stating also the quantity. The sellers, who were the agents of the plaintiffs, soon after receiving the measurer's certificate of quantity, and the half bill, sent them, together with their own bill for the price of the grain, to the purchasers, Meyer & Ree.

These facts are not disputed, and in my opinion they constitute a voluntary delivery of the grain by the plaintiffs, through their agents, to the purchasers, although the cash had not been paid.

It is true the plaintiffs might still rescind the sale, as to Meyer & Ree, if the purchase money should not be immediately paid. Meyer & Ree became, however, by the voluntary delivery to them of the half bill, after the grain had been so

placed on ship board, the possessors thereof, in such manner that all persons having transactions with them concerning the grain, in good faith, without knowledge of, or reason to suspect the existence of, any fraud in obtaining the grain, were entitled to be protected.

This conclusion is further corroborated by the fact, that the sellers did not call on the purchasers for payment till two full days had elapsed after they had so delivered the measurer's half bill and certificate; and that the sellers on the third day received the bank check of the purchasers, Meyer & Ree, in payment, which was not presented at bank till the next day thereafter; thus voluntarily giving to the purchasers four days' credit after full delivery on ship board, with the possession of the measurer's half bill, constituting such indicia of title as, by the custom prevailing at New York, entitled the holders to a delivery to them of bills of lading for the grain. It was not claimed by the plaintiffs that the grain, or the measurer's half bill, had been obtained from the sellers by any trespass or felonious act; which, had such fact existed, would have been fatal to the defense.

It is undoubtedly true that no certificate, receipt or bill of lading of a common carrier, warehouseman, or other bailee, can be made to operate so as to divert the title to merchandise from the true owner; unless some other party has obtained the possession of the merchandise, or the customary indicia of title thereto, by the direct and voluntary consent of the real owner. But a bill of lading will carry the title of the merchandise therein mentioned, to any bona fide purchaser of such bill, without knowledge or reason to suspect the existence of fraud or other malpractice on the part of the shipper in obtaining such possession, although the shipper had actually obtained the merchandise or the indicia of title thereto by fraud, not however amounting to a felony or trespass.

Applying these principles to the present case, it will be found that the defendants Marshall & Co., on behalf of the

vessel and owners, executed a bill of lading to the plaintiffs' vendees, Meyer & Ree, and thereby incurred a liability in respect to the said grain; and that the defendants Morgan & Sons advanced money on the security of the said bill of lading after the defendants Meyer & Ree came to the possession of the grain, and the measurer's half bill and certificate therefor, in the manner above mentioned, and that they stand in the relation of bona fide purchasers to the extent of the liability incurred, and the advances made as aforesaid, and are entitled to the protection afforded by law to such purchasers. No indemnity has been offered to these parties, but the plaintiffs claim to recover against them in disregard of, or rather denying to them any rights, as purchasers or lien holders.

The defendants Marshall & Co., and Morgan & Sons, are entitled to judgment in their favor, with costs.

[New York General Term, February 3, 1862. *Ingraham, Leonard* and *Clerke*, Justices.]