[No. 2,674.]

## BENJAMIN BREWSTER *v.* JOHN SIME, B. F. HAS-TINGS, AND J. W. DOUGLASS.

WEIGHT OF EVIDENCE NOT IMPORTANT ON APPEAL IN CASE OF CON-
FLICT.—Though the Supreme Court may consider a judgment of a District
Court against the weight of evidence, it will not disturb it on that ground,
if there is a substantial conflict of evidence.

OWNER OF MINING STOCK BOUND BY ACTS OF "TRUSTEE."—Where min-
ing stock was placed by the owner in the name of another person, as
"trustee," on the books of the corporation, nothing more appearing, and
such trustee hypothecated it to bankers, who had no notice of who the
owner was, for moneys advanced by them to him: *held*, that the owner
was bound by the acts of the trustee.

WORD "TRUSTEE" IN STOCK NOT NOTICE OF SECRET OWNER'S EQUI-
TIES.—The mere addition of the word "trustee," after the name of a per-
son to whom stock is transferred, is not sufficient to put persons dealing
with the trustee upon inquiry as to the trustee's title, nor will it operate as
constructive notice of the owner's equitable right.

"TRUSTEE" OF STOCK MAY SELL OR HYPOTHECATE IT.—The mere fact
that a person holding the legal title of stock, and apparently having the
right of disposition, is styled "trustee," raises no implication that he has
not authority to sell or hypothecate it in the usual course of business.

APPEAL from the District Court of the Twelfth Judicial District, City and County of San Francisco.

This was an action to recover the sum of seven thousand five hundred dollars, the value of two hundred and sixty-nine shares of the capital stock of the Exchequer Mining Company, alleged to have been converted by the defendants. It appears that in 1867 Joseph Tilden hypothecated five hundred shares of the stock of that company with defendants, as collateral security for a debt of eighteen thousand six hundred and seventy-five dollars. Of these shares the two hundred and sixty-nine referred to stood in Tilden's name as "trustee," on the books of the company, but belonged in fact to the plaintiff.

There having been a judgment in the Court below in favor of defendants, and a motion for new trial denied, the plaintiff appealed.

*J. W. Winans,* for Appellant.

Defendants knew that the stock belonged to the plaintiff. But even if Tilden had hypothecated the stock for his debt to defendants, and defendants had believed the stock to be his, and there were no facts to put them on inquiry, still plaintiff is entitled to recover, under the express provisions of the statute and otherwise. (Hittell's Digest, 940; *McNeil* v. *Tenth National Bank,* 55 Barb. 59; *Ballard* v. *Burgett,* 47 Barb. 646; *Weston* v. *Bear River and A. W. and M. Co.,* 5 Cal. 186; 6 Cal. 429; *Naglee* v. *Pacific Wharf Co.,* 20 Cal. 523; *Strout* v. *Natoma W. and M. Co.,* 9 Cal. 78.)

Again, the certificates were made to "Jos. Tilden, trustee," and the legal title to them was never transferred from Tilden to defendants by indorsement, and never became the property of defendants. (*Payne* v. *Bensley,* 8 Cal. 266.) The fact that the certificates were in the name of Jos. Tilden, as trustee, was sufficient to put defendants upon inquiry,

and subject them to the equities of the true owner, even if the stock of plaintiff was otherwise hypothecated and was hypothecated to them. (*Sayre* v. *Nichols*, 7 Cal. 535; *Hall* v. *Crandall*, 29 Cal. 571; *Brockway* v. *Allen*, 17 Wend. 40; *Urquhart* v. *McIver*, 4 Johns. 116; *De la Chauvette* v. *Bank of England*, 9 B. & C. 205; *Williamson* v. *Brown*, 15 N. Y. 354.)

The use of the word " trustee " in the indorsement, corresponding to the word " trustee " attached to the name of the party to whom the certificate was issued in the body of the certificate, made Tilden's indorsement only a qualified one, and saved the rights of the plaintiff in the paper. (1 Parsons on Bills, 95; *Lawrence* v. *Clark*, 36 N. Y. 128; *Farrington* v. *Frankfort Bank*, 24 Barb. 554; *Mott* v. *Hicks*, 1 Cowen, 538; *Hicks* v. *Hinds*, 9 Barb. 530; *Sayre* v. *Nichols*, 7 Cal. 540; *Darrell* v. *Haley*, 1 Paige Ch. 493; *Williamson* v. *Brown*, 15 N. Y. 364; *Holbrook* v. *Mix*, 1 E. D. Smith, 154–160.)

*John B. Harmon*, for Respondents.

Brewster, having given Tilden the usual *indicia* of ownership, and of the right of disposal, by delivering the stock to him with power to put it in his own name, and to dispose of it, Tilden's pledge to Sime & Co. was valid; and the fact that, when pledged, the certificates stood in the name of " Jos. Tilden, trustee," did not affect the power of disposal, whether by sale or pledge.

Our statute (Hittell, 942) authorizes the party holding stock as trustee to vote it—recognizing him as the owner of the legal title. It is a matter of common notoriety that this section of the statute has given rise to the general custom, with bankers and brokers, to put stock in the name of one of their clerks, as trustee, the sole object being to vote the stock, or to keep track of it. But when such trustee indorses the certificate no one ever asks for

whom he is trustee. If the person named be the real owner the word is surplusage; if he is not, then the owner has permitted the trustee to hold himself out as owner, and he is bound. (*Gibson* v. *Stevens*, 8 How. 399.) The rule applicable is this: Where the owner of personal property has voluntarily given to another the usual *indicia* of the right of disposal, the owner is bound by any disposition made to persons acting upon the faith of such *indicia*. (*Saltus* v. *Everett*, 20 Wend. 278; *Com. Bank of Buffalo* v. *Kortright*, 22 Wend. 361; *Western Transp. Co.* v. *Marshall*, 37 Barb. 509; *Crocker* v. *Crocker*, 31 N. Y. 507; *Fatman* v. *Lobach*, 1 Duer, 354.)

By the Court, CROCKETT, J.:

There are in this case but two material questions of fact, and two of law. The questions of fact are: First, Did Tilden pledge to defendants plaintiff's stock as collateral security for a loan made at the time? Second, Did the defendants then have actual notice that the stock belonged to plaintiff and not to Tilden? On both these points there is a substantial conflict in the evidence. The defendant Hastings testified explicitly that this, with other stock, was hypothecated with the defendants by Tilden, as security for a loan made at the time, and that they had no knowledge or notice that the plaintiff owned any part of it, or that it belonged to any one else than Tilden. The defendant Sime testifies substantially to the same facts; and on the first point they are corroborated to some extent by the witness Sharp. On the other hand, Tilden testifies that the plaintiff's stock was not included in the hypothecation; and his testimony tends to show that Sime had actual notice that the stock belonged to the plaintiff. It was for the Court below to weigh the evidence, and to determine what credence the respective witnesses were entitled to. In such cases it is not our prac-

tice to disturb the judgment on the ground that it is not justified by the evidence, even though we should consider it to be against the weight of evidence.

The questions of law are: First, Whether the fact that the stock stood on the books of the corporation in the name of Tilden, "*trustee*," was sufficient to put the defendants upon inquiry as to the plaintiff's title, and operated as constructive notice of his equitable rights. Second, Whether the fact that the plaintiff, on his departure for Europe, had placed the stock in Tilden's hands for sale, with authority to transfer it on the books of the corporation, had the effect to clothe him with such *indicia* of ownership as to protect the defendants, if in good faith and ignorance of the plaintiff's rights they advanced money to Tilden on the hypothecation of the stock.

I am duly sensible of the gravity of these questions, in a community where transactions in stocks to a large amount are daily made, and where it is a matter of general notoriety that it is a common practice to transfer stocks into the name of some person as "trustee," for the sole purpose of concealing the name of the real owner, whose transactions in buying or selling a particular stock, if his name were known, might operate to enhance or depress its market value. To avoid this result, and also, possibly, with a view to escape assessments upon stocks of doubtful value, or to protect his credit from the damage to which it might be exposed if it were known that he was a large operator in certain stocks, the owner frequently resorts to the device of causing the stock to be transferred into the name of some other person, as "trustee." In such cases the trustee is a mere man of straw, having no interest in the stock nor any trust to perform, except to manage and dispose of it as the owner shall direct. This practice has become so notorious in this State that we cannot affect to be ignorant of it.

In view of the general prevalence of this practice, what

effect in law should be given to the fact that there is appended to the name of the person to whom the certificate is issued the word "trustee?" Shall this be held to operate as constructive notice to all persons dealing with the so-called "trustee" that he is not the owner? Must they deal with him at arm's length, and if they shall purchase the stock, or loan him money upon it, do they take the hazard that on the next day, or the next month, the secret owner may disclose himself and repudiate the transaction and demand the stock? In my opinion, considerations of public policy and common justice demand that, when stock is placed in the name of a "trustee" under these circumstances, the secret owner shall be bound by the acts of his "trustee" dealing with persons who have no actual notice of the relations between the parties. If nothing more appear on the books of the corporation, or on the face of the certificate, to indicate the trust and its nature, than the mere addition to the name of the word "trustee," the owner, who has clothed his agent with the legal title, one of the highest *indicia* of ownership, should bear the consequences resulting from the acts of the agent, rather than an innocent person who advances his money on the faith that the agent is the real owner, or at least has authority to sell or hypothecate the stock. I am not, however, to be understood as holding that words may not be inserted in a certificate which would so clearly indicate a trust and its nature as to limit the power of the trustee, and operate as constructive notice of the equities of the *cestui que trust*. All that is intended to be decided is, that the mere addition of the word "*trustee*" after the name in the certificate is not, in this State, of itself, nothing more appearing, to be deemed constructive notice of the equities of a secret owner of the stock. If it is intended that the so-called trustee shall not have power to sell or hypothecate the stock, without the express consent of the equitable owner, it is an easy matter to limit his

authority by apt words in the certificate. In the absence of such words, the mere addition of the word "*trustee*" after the name will not have the effect to limit the absolute power of disposition, or to operate as constructive notice of any secret equities, as against persons who, in good faith, purchase or advance money on the stock without notice. Standing alone, the mere fact that a person holding the legal title, and apparently having the right of disposition, is styled "*trustee*," raises no implication that he has not authority to sell · or hypothecate the stock in the usual course of business. If it should be held to raise a presumption that some one else was the owner, nevertheless the inference would be, that, in clothing the trustee with the legal title, he had invested him with authority to sell and hypothecate in the usual course of business. And the rule is universal, that where the legal title and apparent right of disposition is vested in a person upon some secret trust, which restricts the powers of the trustee as between the parties, nevertheless the rights of purchasers, pledgees, and mortgagees, in good faith, for a valuable consideration paid at the time, and without notice, are unaffected by the trust.

The transaction between the plaintiff and Tilden was, in my opinion, a secret trust within the true sense and spirit of this rule. When about to leave for Europe the plaintiff indorsed his certificates of stock, so that they could be transferred in his absence, and deposited them with Tilden for sale, knowing that he, thereby, enabled him to transfer the legal title and apparent ownership into his own name. He placed Tilden in a position to represent the stock as its true owner. The indorsement and delivery of the certificates to him, so that they could pass by delivery and might be transferred at his option, clothed him with all the *indicia* of own-

ership, and enabled him to hold himself forth as the real owner. If Tilden had caused the stock to be transferred to himself, omitting the word "*trustee*" from the certificate, it cannot be doubted that he would, apparently, have been the real owner, with a perfect title. There would have been nothing on the face of the certificate, or in the corporate books, to awaken the slightest suspicion that he was not the owner. In that event, if the defendants, finding his title perfectly regular on its face, had loaned him money on a pledge of the stock, without notice of the plaintiff's equities, the lien for their advances would have been unquestionably good as against the plaintiff. After enabling Tilden to invest himself with a legal title, perfectly regular on its face, and apparently valid, the plaintiff would be estopped to deny Tilden's title as against purchasers or pledgees who advanced their money in good faith in the ordinary course of business, and without notice of the plaintiff's equities. If the rule were otherwise, there would be an end to transactions in stocks. If purchasers and pledgees dealing with titles strictly regular and apparently valid on their face, are to take the hazard of all latent equities existing in the hands of any antecedent holder of the stock, prudent persons would abstain from such perilous ventures. If Tilden, in violation of his agreement with the plaintiff, has caused the stock to be transferred to himself, and has hypothecated it for his own account, instead of selling it for account of the plaintiff, he is liable in damages for a breach of the contract. But after enabling Tilden to invest himself with the legal title and apparent ownership, on the faith of which he obtained advances from the defendants, without notice of the plaintiff's equities, the plaintiff occupies the relation of *cestui que trust* attempting to assert a secret trust against persons who, in ignorance of the trust, have made advances on the property to the trustee holding the legal title and apparent ownership. If Tilden has perpetrated a fraud, the plaintiff

enabled him to do it, by placing it in his power to invest himself with the legal title and apparent right of disposition, and his equities are inferior to those of the defendants, who, in good faith, and without notice, made advances on the stock in the belief that Tilden was the owner, or, at least, had the right to hypothecate it.  There is nothing new in these propositions.  In this State stock is personal property, and the general rule is, that if the owner of such property places it in the possession of another, and confers upon him the usual *indicia* of ownership or right of disposal, he is bound by any disposition made of it, to one who acquires it, without notice, for a valuable consideration on the faith of such *indicia*.  (*Saltus* v. *Everett*, 20 Wend. 278, 280; *Com. Bank, etc.,* v. *Kortright*, 22 Wend. 361; *Western Transportation Company* v. *Marshall*, 37 Barb. 509, 515; *Crocker* v. *Crocker*, 31 N. Y. 507; *Fatman* v. *Lobach*, 1 Duer, 354; 2 Kent's Com. 621; Story's Agency, Secs. 83, 94, 228; *Bridenbecker* v. *Lowell*, 32 Barb. 17; *Johnson* v. *Jones*, 4 Barb. 373; *Bank of Metropolis* v. *New England Bank*, 11 How. 240.)

The mere delivery of the possession of personal property does not, standing alone, constitute such an *indicium* of ownership as will bind the owner.  For example: If A. loan his horse to B. temporarily, the latter can make no disposition of it which would bind the owner.  But if the delivery be accompanied by an absolute bill of sale, and if B. exhibits the bill of sale to a purchaser who buys in good faith, without notice, in the belief that B. is the owner, A. will be bound by it, even though it was secretly agreed between A. and B. that notwithstanding the bill of sale the horse was to remain the property of A.  (*Ballard* v. *Burgett*, 47 Barb. 646; *Coril* v. *Hill*, 4 Denio, 327.)  There must be something more than the mere delivery of the possession to constitute such *indicia* of ownership as will bind the owner.  But in this case the plaintiff not only delivered to Tilden the possession of the certificates, but accompanied the delivery with

an authority to transfer the stock on the corporate books, whereby Tilden was enabled to procure new certificates in his own name, vesting in him the legal title and apparent right of disposal. This brings the case fully within the rule already discussed, and estops the plaintiff from setting up his title in derogation of the defendants' lien.

Judgment affirmed as of the 2d day of October, 1871.