CREIGHTON, appellant, *v.* BLACK, respondent.

MILITIA VOUCHERS — *not negotiable — statutory prohibition — how transferred — not forfeited.* Claims against the United States, such as the so-called Montana Militia vouchers, are not negotiable paper, that can be transferred by mere delivery. The statutes of the United States (see Rev. Sts. of the U. S., p. 693, § 3477) expressly prohibit it, and no custom to the contrary is entitled to be heard in evidence. Parties receiving such vouchers from a person not legally entitled to them, or authorized to dispose of the same for the lawful owner, and without the formalities that the law requires, can acquire no title thereto, but are rightly chargeable with a knowledge of the statute, and the lawful owner does not lose his right thereto by neglect to enjoin the transfer of the same.

*Appeal from First District, Madison County.*

W. F. SANDERS and J. G. SPRATT, for appellants.

JOHNSTON & TOOLE and S. WORD, for respondent.

WADE, C. J. In this case the court below found certain facts and rendered judgment for the defendant thereon. There were no specific exceptions to the findings, and no motion for a new trial. We cannot, therefore, look into the evidence to determine whether the facts found are supported by it, but must take such findings as correct and ascertain if the judgment rendered thereon was justified. The findings are as follows:

"1. That the vouchers described in plaintiff's complaint were issued by one Hamilton Cummings, purporting to be a quartermaster-general of Montana militia, but I do not find from the proof that any such office or officer was authorized by law, and therefore find that said vouchers were issued without authority of law, and that they had no value whatever in law."

"2. That said vouchers were, however, issued to and in favor of defendant, for forage furnished by him and his partner for said Montana militia.

"3. That after the same were so issued the defendant signed a blank receipt, at the bottom of each of said vouchers, when the same was retained by said Cummings for the purpose of procuring the signature of approval of the governor of the Territory thereto.

"4. That said Cummings thereafter refused to deliver said vouchers to the defendant, but fraudulently retained the same.

"5. That the plaintiffs, without any knowledge of the fraudulent manner by which said Cummings held said vouchers, obtained the same from said Cummings as collateral security for a *bona fide* debt, yet unpaid, and largely in excess of the amount due, and finally paid upon said vouchers.

"6. That all such vouchers issued by said Cummings, as such quartermaster-general, passed in trade, barter and sale in the Territory of Montana, upon delivery, and at the rate of from five to ten cents per dollar upon their face.

"7. That the vouchers, so obtained by the plaintiffs from said Cummings, remained in the hands of the plaintiffs, unknown to the defendant for several years, and until one General Hardie had been appointed by the general government at Washington to repair to the Territory of Montana to examine into the cause of issuing such warrants or vouchers, and to make report thereof, at which time one of the plaintiffs, P. A. Largey, exhibited the vouchers in controversy herein to the defendant, and requested him to make proof of the same before said General Hardie.

"8. That said defendant then received said vouchers from said Largey, and then gave his receipt therefor, for the collection of the same, and then made proof of the same before said Hardie."

"9. That some time thereafter, when the general government,

acting upon the report of said Hardie, was about taking steps for the adjustment of such vouchers and claims, the plaintiff Largey demanded of, and then received back from said defendant, the said vouchers in controversy, and some time thereafter caused the same to be presented to the designated department at Washington for final adjustment and payment, pursuant to an act of congress relative thereto.

" 10. That said defendant, both before said General Hardie, at Helena, Montana, and before said designated authority or department at Washington, protested against payment upon or on account of said vouchers being paid to plaintiff, or to any person other than himself.

" 11. That both the said defendant and said Largey presented proofs of their respective claims to and on account of said vouchers, to and before said department at Washington, when upon a hearing thereof the same was decided in favor of the defendant, and for the sum of $6,891.70 in full of said vouchers, and which was then paid to defendant, who then departed from the city of Washington to the State of Missouri.

" 12. And I do not find from the proofs that any false or fraudulent representations were made by either of the parties relative to the vouchers in controversy."

Upon these facts the defendant had judgment.

The appellants assert that these vouchers were transferable by delivery, and then invoke the principle that where one of two innocent parties must suffer by the wrongful or fraudulent act of a third, the one who enables the third to commit the act must bear the loss. Therefore, that Black, who permitted the vouchers to remain in the possession of Cummings for several years, without taking any action to restrain his assignment or transfer of them, thereby furnished the means and placed it in the power of Cummings to defraud plaintiffs, hence Black must suffer instead of plaintiffs.

This principle is applicable to certain well-defined cases. A *chose in action* is not transferable by delivery, but if the owner places it in the hands of another, together with such *evidences* of ownership as to the common understanding of the world usually ac-

companies the authority of disposal, then a sale would bind the owner and protect an innocent purchaser.

The authorities are cited and well considered in the case of *Brewster* v. *Sime*, 42 Cal. 147, where it is held:

"In this State stock is personal property, and the general rule is, that if the owner of such property places it in the possession of another, and confers upon him the usual *indicia* of ownership or right of disposal, he is bound by any disposition made of it to one who acquires it, without notice, for a valuable consideration, on the faith of such *indicia*, (citing) *Saltus* v. *Everett*, 20 Wend. 278–280; *Com. Bank, etc.,* v. *Kortright*, 22 id. 361; *Western Tran. Co.* v. *Marshall*, 37 Barb. 509, 515; *Crocker* v. *Crocker*, 31 N. Y. 507; *Fatman* v. *Lobach*, 1 Duer, 354; 2 Kent's Com. 621; Story's Agency, §§ 83, 94, 228; *Bridenbecker* v. *Lowell*, 32 Barb. 17; *Johnson* v. *Jones*, 4 id. 373; *Bank of Metropolis* v. *New Eng. Bank*, 11 How. 240. The mere delivery of the possession of personal property does not, standing alone, constitute such an *indicium* of ownership as will bind the owner. * * * There must be something more than the mere delivery of the possession to constitute such *indicia* of ownership as will bind the owner."

Applying these principles to the case in hand, what do we find? These vouchers were issued to Black, in payment of certain property furnished by him to the government, all of which appeared on the face of the vouchers, and attached thereto was his receipt in blank for the amount he should receive. There was nothing upon the voucher itself, or in any circumstances connected therewith, or its possession by Cummings, to indicate, either directly or remotely, that Black had parted with his title. He, Cummings, received the property for a special purpose, and fraudulently retained the possession, and when he sold the same to appellants, there was no evidence whatever, except the bare fact of possession, to indicate to them that he was the owner, while the vouchers themselves conclusively notified them that Black was the owner.

We have seen that the bare fact of possession is not sufficient to bind the owner, but the appellants, to avoid the force of this principle, proved on the trial, and the court found as a fact, that these vouchers issued by Cummings, as such quartermaster, passed

in trade, barter and sale, in the Territory of Montana, upon delivery, and, therefore, that the rule is not applicable to this species of property. The fact that these vouchers, in this Territory, were negotiated by delivery does not make them negotiable paper. If they were so negotiated, it was in violation of the settled principles of the common law, and of an express statute, ·and those receiving them by mere delivery did so at their peril. These claims are against the United States, and the statute upon the subject of the transfer of such claims is as follows:

"All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payments of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers and assignments, and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer, and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney, to the person acknowledging the same." Rev. Sts. of the U. S., § 3477.

In the face of this statute, the fact that these militia vouchers, in this Territory, were assignable by delivery, before they had even been presented to the government and allowed, is not worthy of any consideration. The provisions of positive law cannot be so easily disregarded, and the attempt to make the violation of such law the foundation of a right is futile.

Black had the right to rely upon the provisions of this statute, and to know therefrom that his mere delivery of the vouchers to Cummings carried with it no right, and the appellants, when they purchased the same from him, were chargeable with a knowledge of the law, and ought to have known that his transfer and delivery of possession conferred no title; first, because the assignment from

Black to Cummings was void, and second, because his transfer to them was also void.

Black, therefore, was not chargeable with neglect, even if failing to enjoin the transfer of the vouchers by Cummings. Cummings had no title, and conveyed none to appellants.

Judgment affirmed, with costs.

*Judgment affirmed.*

BLAKE, J., did not participate in this case, having been of counsel.