[Civ. No. 4440. First Appellate District, Division One.—November 22, 1924.]

## GAETANO MANCINI, Respondent, v. HENRIETTA M. SETARO et al., Defendants; ETTORE PATRIZI, Appellant.

[1] PLEDGES — INDORSEMENT OF CERTIFICATE OF STOCK — PLEDGE OR TRANSFER BY APPARENT OWNER—RECOVERY BY TRUE OWNER—INTEREST OF PLEDGEE.—The owner of stock who voluntarily delivers the indorsed certificate to a third person, thereby allowing him to assume the apparent ownership of the stock, cannot recover the same from a *bona fide* pledgee or transferee of the apparent owner without payment of the debt for which the pledge was made. The pledgee has a special property in the stock and not a mere lien upon it, and does not lose all rights and interest in the stock by an invalid private sale thereof, without complying with the requirements of the code.

[2] ID.—CLOTHING ANOTHER WITH APPARENT TITLE—INNOCENT PARTY —TITLE—ESTOPPEL.—Where the true owner of the property clothes another with the apparent title to or power of disposition over it, and an innocent third party has thereby been induced to deal with the apparent owner in reference thereto, the true owner is in such case estopped from afterward asserting his title.

[3] CORPORATIONS—REFUSAL TO TRANSFER STOCK ON BOOKS AND ISSUE NEW CERTIFICATE—RECOVERY OF PENALTY UNDER SECTION 324, CIVIL CODE—PRESENTATION OF OLD CERTIFICATE—EVIDENCE—APPEAL.—In an action by a transferee of stock to recover the penalty provided for by section 324 of the Civil Code for alleged

---

1. See 7 R. C. L. 214; 6 Cal. Jur. 786.

2. See 10 R. C. L. 777; 10 Cal. Jur. 641.

3. Duty of corporation to transfer stock on books, note, 136 Am. St. Rep. 1027.

Right to damages for failure or refusal of corporation to transfer stock on books, note, 13 Ann. Cas. 299. See, also, 7 R. C. L. 269; 6 Cal. Jur. 804.

refusal to enter the transfer on the books of the corporation and to issue a new certificate, where the evidence upon the question whether plaintiff failed, when demand for transfer was made, to present and deliver the certificate to the corporation for cancellation, as required by a by-law of the corporation, was conflicting, the finding of the trial court upon such question will not be reviewed upon appeal.

[4] ID.—PRESENTATION OF OLD CERTIFICATE TO CORPORATION—BY-LAW REQUIRING—REASONABLENESS OF.—A by-law of a corporation requiring that stock be first presented to the corporation for examination and cancellation before transfer upon the books is reasonable. (On petition for hearing in supreme court, approval withheld.)

[5] ID.—OFFER OF STOCK FOR SALE TO CORPORATION BEFORE TRANSFERABLE — BY-LAW REQUIRING — BINDING EFFECT UPON TRANSFEREE.—A by-law of a corporation providing in effect that no share of stock of said corporation is transferable without the holder thereof first offering the same for sale to the corporation is not binding upon a transferee of stock of said corporation, the transferred certificate containing no recital of any restriction upon its transfer.   (On petition for hearing in the supreme court, approval withheld.)

[6] ID.—SHARES OF STOCK—HOW TRANSFERRED.—Shares of stock may be transferred by indorsement and the delivery of the certificate, and the possession of a certificate indorsed in blank gives the holder all the indicia of absolute ownership, and even where certificates have been issued, transfer may be made without an assignment or delivery thereof in any manner appropriate to the assignment of choses in action.

[7] ID.—ABSENCE OF REASON FOR REFUSAL TO ISSUE NEW CERTIFICATE —EVIDENCE.—In such action, the evidence sufficiently showed that defendant possessed no legal reason justifying the refusal to issue a new certificate of stock to plaintiff.

(1) 14 **C. J.**, p. 733, sec. 1118, p. 783, sec. 1186.   (2) 21 **C. J.**, p. 1177, sec. 181.   (3) 14 **C. J.**, p. 765, sec. 1164.   (4) 14 **C. J.**, p. 677, sec. 1047.   (5) 14 **C. J.**, p. 671, sec. 1040.   (6) 14 **C. J.**, p. 671, sec. 1041, p. 675, sec. 1046.   (7) 14 **C. J.**, p. 770, sec. 1171.

4.  Extent to which transfer of stock may be restricted, note, 57 **Am. St. Rep.** 379.

Validity of by-law regulating alienation of stock, notes, 16 **Ann. Cas.** 702; **Ann. Cas.** 1916D, 1202.

Right of corporation to refuse to transfer stock on books because of objections of former holder, note, 27 **L. R. A. (N. S.)** 200.  See, also, 7 **R. C. L.** 262; 6 **Cal. Jur.** 784.

6.  See 7 **R. C. L.** 264; 6 **Cal. Jur.** 791.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. T. I. Fitzpatrick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Devoto, Richardson & Devoto for Appellant.

J. J. Dunne for Respondent.

ST. SURE, J.—Appeal by defendant Patrizi from a judgment in favor of plaintiff for the sum of $400, with costs, under section 324 of the Civil Code, providing in part: "Whenever any officer of any corporation shall refuse to make entries upon the books thereof, or to transfer stock therein, or to issue a certificate or certificates therefor to the transferee as provided by this and the next preceding section, such officer shall be subject to a penalty of four hundred dollars, to be recovered as liquidated damages, in an action brought against him by the person aggrieved."

The complaint alleges that defendants Setaro and Patrizi are secretary and president, respectively, of L'Italia Press Company, a California corporation with a capital stock of $100,000 divided into 4,000 shares of $25 each; that in August, 1908, one Emilio Chirone was the owner and holder of eight shares of said stock, represented by certificate number 19; that Chirone afterward sold the shares and indorsed the certificate to Buffalo Brewing Company, a corporation; that thereafter the latter company, by L. C. Brandt, its agent, again sold the shares and indorsed the certificate to one V. Savio; that in 1912 the stock was sold and the certificate indorsed by Savio to Gaetano Mancini, this plaintiff, and that he has ever since been the owner thereof and entitled to have the stock transferred on the books of the corporation and a new certificate issued to him therefor. Presentation to the defendants as officers of certificate 19, and demand for a new certificate, with consequent refusal, is alleged to have been made in August, 1920, and the charge made that defendants still refuse to issue such certificate.

Defendants answered, denying the sales alleged to have been made by the Buffalo Brewing Company and V. Savio,

the agency of Brandt for the brewing company, the owner-
ship of the stock by plaintiff.   They also denied that Setaro
was secretary, denied that presentation of the certificate·and
demand for transfer was made of both defendants, denied
their refusal to issue such new certificate, and alleged that
plaintiff never delivered or presented certificate 19 or de-
manded a new certificate.   The further defense is made that
no presentation or demand was ever made; that even though
such were the case, defendants were in no position to issue
a new certificate without evidence that the indorsements on
certificate 19 were genuine and made for a valuable consid-
eration, and that Brandt was the agent of the Buffalo Brew-
ing Company and authorized to transfer the stock on behalf
of said corporation; none of which evidence was presented
or offered by plaintiff.   Further defense is made that neither
the original holder nor his alleged assignees ever offered the
stock for sale to the company in compliance with an existing
by-law providing " . . . no share of stock of this corporation
is transferable without the holder thereof first presenting
same at the office of this corporation and offering same for
sale to said corporation."

An amendment to the special defense of the answer was
filed, affirmatively alleging that the indorsements were not
genuine and made for valuable consideration, and that
Brandt was not the agent, nor authorized by the Buffalo
Brewing Company to transfer the stock on its behalf.

Trial was had before the court, which found that all the
material allegations of the complaint, excepting the secre-
taryship of Setaro, were true; that plaintiff, in August,
1920, was the owner of the stock and entitled to the issuance
of a certificate showing such fact, that he has been damaged
in the sum prescribed by section 324 of the Civil Code, be-
cause of Patrizi's refusal to issue such certificate, and that
all of the affirmative allegations of the answer are untrue.

Defendant contends that the ownership of the shares of
stock still remains in Chirone, because the evidence shows
that the certificate was indorsed and delivered prior to 1909,
to the agent of the brewing company merely as security for
a loan.   That the stock was never sold and passed into the
brewery agent's hands only as a pledge.   The money bor-
rowed was never repaid, Chirone later failing in business.

Apparently Chirone lost all interest in the stock after his failure and has abandoned same. The agent of the brewing company transferred the stock for a valuable consideration to Savio on October 26, 1909. He testified, according to his best recollection, that this transfer was made after a meeting of Chirone's creditors and with the latter's knowledge. Chirone, who appeared as a witness in the case, did not deny the agent's testimony, made no claim to the stock, and is now asserting none. At a later date Savio sold the stock to plaintiff. The law governing a situation such as the one here presented is settled in this state. [1] The owner of stock who voluntarily delivers the indorsed certificate to a third person, thereby allowing him to assume the apparent ownership of the stock, cannot recover the same from a *bona fide* pledgee or transferee of the apparent owner without payment of the debt for which the pledge was made. The pledgee has a special property in the stock and not a mere lien upon it, and does not lose all rights and interest in the stock by an invalid private sale thereof, without complying with the requirements of the code. (*Brittan* v. *Oakland Bank of Savings,* 124 Cal. 282 [71 Am. St. Rep. 58, 57 Pac. 84].) [2] Where the true owner of the property clothes another with the apparent title to or power of disposition over it, and an innocent third party has thereby been induced to deal with the apparent owner in reference thereto, the true owner is in such case estopped from afterward asserting his title (*Fowles* v. *National Bank of California,* 167 Cal. 653, 656 [140 Pac. 271]). These views are declared in *Arnold* v. *Johnson,* 66 Cal. 502 [5 Pac. 796], and have never been receded from. The facts of the instant case differ materially from those in the cases cited by defendant where there was mere naked possession or the securities were taken from the true owner by fraud or theft.

Defendant's next point relates to the following provision of the by-laws of the corporation: "No share of stock of this corporation is transferable without the holder thereof first presenting same at the office of this corporation and offering the same for sale to said corporation."

[3] It is claimed that plaintiff is not entitled to a judgment because the evidence shows that when the demand for a transfer was made plaintiff failed to present and deliver

the certificate to the corporation for cancellation. Upon this point there is a sharp conflict in the evidence, and under the familiar rule that the finding of the trial court as to a fact decided upon the weight of the evidence will not be reviewed, we are precluded from further examination or discussion of the subject.

An interesting question is presented, however, by that phase of the case inherent in the by-law provision requiring the holder of the stock to not only present but also to offer the same for sale to said corporation. [4-5] It is readily seen that a by-law requiring that stock be first presented to the corporation for examination and cancellation before transfer upon the books is reasonable, but the additional and conjunctive requirement that the holder must also offer the stock for sale to the corporation before transfer is difficult of comprehension under the facts presented. We are unable to see how any such restriction could be binding upon plaintiff. Counsel for defendant call our attention to 14 C. J., section 1040, page 669, quoting the following: "It is generally held that a restriction is valid where it is properly imposed, which requires that before stock is offered to outsiders an opportunity to purchase the stock on certain terms shall be given for a stated period to the corporation or board of directors, or to the corporation or other stockholders."

The remainder of the text reads: "But on the other hand it has been held that such a restriction is an invalid restraint on alienation, and that a by-law containing such a restriction is invalid where it is not authorized by statute. It has been held, however, that if the by-law is invalid as a by-law, it may be binding as an agreement on the stockholders who unanimously adopted it," etc. [6] In this state shares of stock may be transferred by indorsement and the delivery of the certificate, and the possession of a certificate indorsed in blank gives the holder all the indicia of absolute ownership (6 Cal. Jur., sec. 195, p. 790), and even where certificates have been issued, transfer may be made without an assignment or delivery thereof in any manner appropriate to the assignment of choses in action. (6 Cal. Jur., sec. 198, p. 794.) The certificate here contained no recital of any restriction upon its transfer, and the record is devoid of anything enlightening upon the subject.

[7]   Plaintiff testified that upon one occasion when, accompanied by Attorney O'Connor, he called upon defendant and demanded a transfer of the stock, defendant told him he would not transfer it, but that he would buy. "I told him I don't need any money—that I wanted the stock transferred," said the witness. "He said he would not register them because the regulations would not permit it."

When defendant took the stand in his own behalf he testified as follows: "On the second occasion he (plaintiff) was accompanied by Mr. Gaviati. He said: 'Mr. Patrizi, I am here. I have got some stock to transfer on the books of the corporation and I want you to make the transfer.' I said: 'Mr. Mancini, we cannot make that transfer. I want to consult the board of directors, and then you know, there are some rules of the corporation to be complied with, and if you do not comply with these rules, we cannot accede to your demand,' and on the first occasion of his visit with Mr. O'Connor, I made practically the same statement, and to my objections, Mr. O'Connor said: 'What are the objections?' I said: 'There are some objections. They are in our by-laws and besides we have a special article in the by-laws stating that no transfer can be made unless the owner or the holder of the certificate offers the same first for sale to the corporation,' so O'Connor said: 'Well, all right. Suppose we sell it to you. Do you want to buy it?' I said: 'No, I want to consult the board of directors.' He said: 'How much do you want to pay? Would you pay any amount?' I said: 'No, I would pay the market value.' He said: 'What is the market value?' I said: 'The par value is $25 a share.' Mr. Mancini said: 'So you don't want to transfer it.' Mr. O'Connor said: 'Suppose we ask a bigger amount. Would you be willing to buy it?' I said: 'No, if we buy it, we pay the market value only.' We had a little further discussion and they went away."

No offer was ever made on the part of the corporation to purchase the stock. Some light is thrown on the obstinacy of the situation by the defendant, who in his answer to a question by the trial court gave "one of the reasons" why the stock was not transferred.

"One of the reasons," said defendant, "I would not like to be associated with a person who deliberately for years has

tried to hurt the interest of the corporation. That is one reason—hurting the interest of that corporation individually, openly—who are spreading lies against the interest of the corporation—that is one.

"Mr. Devoto: Q. In other words, he is an enemy of the corporation.

"A. An enemy of the corporation.

"Mr. McKannay: Q. Has not that been the reason why you did not transfer it?

"A. It was. That is the reason I took advantage of those rules."

While we sympathize with defendant's reluctance to permit a rival to avail himself of the privilege of a stockholder in a corporation of which defendant is president, such reason alone would not excuse the refusal to comply with the plain provisions of the code relating to the transfer of stock. There appears to be no legal reason to justify such refusal, and the evidence is sufficient to sustain the findings. The record is free from error prejudicial to defendant, and we are of the opinion that the judgment should be affirmed.

It is so ordered.

Knight, J., and Cabaniss, P. J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 21, 1924, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 19, 1925, and the following opinion then rendered thereon:

THE COURT.—In denying the application for a hearing by this court we express no opinion as to the question of the validity of the by-law discussed in the opinion of the district court of appeal. We regard its conclusion in that regard as unnecessary to the decision in view of the holding of said court that the appellant failed to establish his affirmative defense as to the willingness of the corporation to purchase the plaintiff's stock.