[Civ. No. 8763.   First Appellate District, Division One.—February 23, 1933.]

S. E. NIXON, Respondent, v. TORRANCE BRICK COM-PANY (a Corporation) et al., Defendants; GEM STATE LUMBER COMPANY, INC. (a Corporation), Appellant.

Martineau & Stratton for Appellant.

Doyle, Clark, Thomas & Johnson for Respondent.

BURROUGHS, J., *pro tem.*—This is an action in equity brought by the California First National Bank of Long Beach, a corporation, through its assignee, S. E. Nixon, to compel the defendant Torrance Brick Company, a corporation, to issue its stock certificate for 115 shares of its capital stock to plaintiff and to quiet title to said stock as against the defendant Gem State Lumber Company, a corporation.

Plaintiff claims title by virtue of an attachment levied May 8, 1929, and an execution sale had in March, 1930, on a judgment rendered against the defendant William G. Reed.

Defendant Gem State Lumber Company claims a lien upon said stock by virtue of certain pledges thereof made by William G. Reed to said company until the debt secured thereby has been paid. Defendant William G. Reed defaulted. Defendant Torrance Brick Company disclaimed any interest in the subject matter of the controversy. Judgment went for the plaintiff and the defendant Gem State Lumber Company has appealed.

As stated by both the appellant and the respondent in their respective briefs, the sole question to be determined on this appeal is one of fact, viz.: Whether or not the defendant William G. Reed did before the eighth day of May, 1929 (the day plaintiff's attachment was levied thereon), pledge 115 shares of the capital stock of the defendant Torrance Brick Company to the defendant Gem State Lumber Company as security for a debt.

The evidence discloses without conflict that on the eighteenth day of May, 1928, said William G. Reed was indebted to the Gem State Lumber Company, a corporation, hereinafter called the lumber company, in the amount of $9,000 as follows: $4,000, money borrowed for personal purposes, and $5,000, money borrowed for the specific purpose of buying stock in a corporation then being organized. On the same day he gave a promissory note for the $4,000 debt, and executed a pledge for the payment of this debt. In the latter instrument, it is stated, he pledged as security four certificates of the capital stock of the Torrance Brick Company and recited the delivery of them as of that date. These four certificates were described therein as "118 shares of stock of the Torrance Brick Company, a corporation, evidenced by certificate #28 for fifteen shares, certificate #32 for three shares, certificate #25 for fifty shares and certificate #24 for fifty shares which said shares of stock were originally issued to the Beverly Building & Security Company, . . . and each certificate endorsed in blank and delivered to the undersigned and this day delivered to the said Gem State Lumber Company". After words of warranty the following direction occurs: " . . . and hereby authorizes and directs the said Gem State Lumber Company to deliver said certificates to the Torrance Brick Company and to accept new certificates either in its own name or in the name of the undersigned, as it shall elect". The instrument was dated May 18, 1928, and signed William G. Reed.

There was another pledge agreement executed by which 50 shares of the capital stock of the Reed Construction Company were pledged as security for the payment of the $5,000 note above referred to, but this pledge is not in controversy here.

The stock certificate No. 32 for three shares of the Torrance Brick Company's stock, above referred to, is not included in this suit, and need not be further referred to.

There was also a third pledge bearing date of May 18, 1928, whereby all of the above-named shares of stock of the Torrance Brick Company were pledged as security for the payment of the two notes above referred to in the total sum of $9,000. Defendant Reed testified that he signed this last-mentioned pledge agreement, but that it was signed by him on the twenty-sixth day of May, 1930, which was after the sale of the stock under the writ of execution in the suit, through which the plaintiff claims title. Other witnesses testified that this last pledge agreement was made and delivered on May 18, 1928. The court found that it was actually made at the time testified to by Reed. We see nothing in the record that renders the evidence given by Reed inherently improbable, and therefore the evidence discloses a substantial conflict upon which the finding of the trial court last referred to is based. Under well-settled rules of law we cannot disturb a finding so made.

The court found as a fact that on May 18, 1928, the defendant Reed executed and delivered to the Gem State Lumber Company the $4,000 note herein referred to, but that he did not contemporaneously or at any other time indorse or deliver to the said company the four certificates of stock of the Torrance Brick Company; the court also found that the Gem State Lumber Company had no right, title or interest in said stock. The negative portions of these findings are attacked by appellant on the ground that they are without support in the evidence.

Evidence upon this subject is as follows: Mr. Merrill (attorney for Gem State Lumber Company) testified that he received these four certificates on the 18th of May, 1928, and on the same day inclosed them in a letter addressed to the Torrance Brick Company, at Torrance, California, asking that they be transferred on the books of the corporation to William G. Reed and immediately returned to the Gem Lumber Company. Mr. Pullman, secretary of the Torrance Brick Company in 1928, identified the letter above referred to as having been received by said company, and it was produced from their files. It reads as follows: ''(Letterhead of) Merrill & Merrill, Counselors and Attorneys at Law, Pocatello, Idaho, May 18th, 1928. Mr. Victor Pullman, General Manager, Torrance Brick Company, Torrance, California. Dear Mr. Pullman: We are enclosing

herewith four certificates of stock being numbers 24, 25, 28 and 32 for a total of 118 shares of the capital stock of your company. You will find these certificates all endorsed. Please issue a new certificate for the total number of these shares to the order of William G. Reed and send same to us immediately. Sincerely yours, Merrill & Merrill. (signed) A. L. Merrill, By F.''

It was stipulated that the books of the Torrance Brick Company introduced in evidence show as follows: That certificates Nos. 24, 25 and 28 have each been torn from the book and subsequently repasted to the stubs; that certificate No. 24 for 50 shares was issued to the Beverly Building and Securities Corporation on May 14, 1927; that the purported assignment reads: ''For value received I hereby sell, transfer and assign to Wm. G. Reed, Trustee, 50 shares, with the authorization to V. T. Pullman, Secretary, to transfer same''; that the assignment is dated the twenty-fifth day of May, 1928, and signed ''Beverly Building & Securities Corporation, by E. Roy Davis, Secty. & Treasurer, witnessed by Catherine L. Davis''; that certificate No. 25 for 50 shares shows issuance to the same company, May 14, 1927, and shows the same assignment as No. 24; that neither the stubs nor the certificates show cancellation or receipts for the original issue of the stock; that the stub of certificate No. 36 for 115 shares shows that it was issued to William G. Reed, Trustee, May 25, 1928, and transferred from Beverly Building & Securities Corporation May 25, 1928; that the numbers of the original certificates were: 24 for 50 shares, 25 for 50 shares, 28 for 15 shares; and that certificate No. 36 for 115 shares was received the twenty-fifth day of May, 1928; that it was signed William G. Reed, and underneath the signature is the word ''Trustee'' in different ink from the words ''William G. Reed'', and on the upper portion of the stub in red ink appears ''Pledge to Gem State Lumber Company per letter of June 5, 1928.'' Mr. Pullman testified in relation to this indorsement: ''Yes, I have seen that writing on there—do not know whose writing—saw it first about a year ago—that was the first time I saw it because I didn't look into the books—I am out in the yard all the time—I was secretary in 1928.'' He testified further that he had no recollection of signing certificate No. 36, which was issued in lieu of the pledged shares, but recognized the

signature as his; that he was not in the habit of writing any part of the stubs or certificates himself; that Miss Johnson and Mr. Davis did that type of work and that these two employees left about a year ago; that he did not know if it was written by either Davis or Johnson—he did not know the handwriting of either of them; that no part of either stub or certificate was in his handwriting. In relation to this indorsement Mr. Sheldon, treasurer of the Gem State Lumber Company, testified that on the fifth day of June, 1928, he dictated a letter addressed to Torrance Brick Company, and he offered a carbon copy thereof in evidence. Mr. Pullman, secretary of Torrance Brick Company, produced the original letter from the files of the Torrance Brick Company, which is as follows: ''(Letterhead of the Gem State Lumber Company) June 5, 1928. Torrance Brick Co., Torrance, Calif. Gentlemen: Attention Mr. V. S. Davis, Auditor This is to certify that Certificate No. 36 of the capital stock of the Torrance Brick Company for 115 shares, made payable to Wm. G. Reed, Trustee, has been pledged to us as collateral security. Please make a note of this upon your records. Very truly yours, Gem State Lumber Company per (signed) A. O. Sheldon, Treasurer.'' Mr. Pullman testified that the letter came from the files of the Torrance Brick Company. ''Q. Was that received at your office in the regular course of business? A. Well, that I cannot say, because it was sent to our auditor; I didn't see it. Q. . . . All you know is that it appears in your files, in the files of the Torrance Brick Company? A. Oh, yes. Q. In the correspondence files? A. Yes.'' Mabel Craig testified that she was a stenographer in the office of the Gem State Lumber Company and was such on June 5, 1928; that the letter last referred to was dictated to her by Mr. Sheldon; that she wrote it on the day of its date, and also mailed it on the same day. Defendants' exhibit ''W'' is a letter taken from the files of the Torrance Brick Company. It is on the letterhead of the Gem State Lumber Company, dated May 28, 1929, and addressed to ''Mr. V. S. Davis, Auditor, Torrance Brick Co., Torrance, Calif. Dear Sir: We are returning with this letter our letter of June 5th on which we overlooked placing a signature. Thanks for calling this to

our attention. Yours truly, Gem State Lumber Company, per (signed) A. O. Sheldon, Treasurer.''

Respondent argues from this that the letter of June 5, 1928, was not sent until in May, 1929, after the attachment had been levied, and that the letter of May 28, 1929, supports this contention; that the letter of June 5, 1928, showed that it had been folded twice or three times and mailed more than once; that this condition of the letter supports their contention that there had been no pledge prior to May 8, 1929. We find no word in the evidence as to the condition of this letter as stated by counsel in his brief. His reasoning would, however, seem to us to confirm the idea that it had been mailed at the time of its date, remanded to sender to be signed and again mailed in May, 1929, after the attachment was levied, and we would logically infer that the Torrance Brick Company might have placed the red ink notation on the certificate immediately after the receipt of the letter, even though it was returned to sender for signature. The letter of May 28, 1929, in which the June 5th letter was returned to the brick company after the signature, obviously could not have reached the brick company before the levy of attachment which was on the eighth day of May, 1929. However, it must be presumed to have been there for the greater part of a year before the sale took place in March, 1930. In November, 1930, Mr. Pullman testified (see *supra*) that he first saw it there about a year ago, that was the first time he saw it because he did not look into the book. This would mean that he first saw the red ink notation about four or five months before the execution sale under which the plaintiff claims title.

Defendant placed in evidence the original certificate No. 36, showing: No. 36 for 115 shares issued to William G. Reed and dated the 25th day of May, 1928. ''(Seal: 'The Torrance Brick Company, Long Beach, California . ... ') Attest V. T. Pullman, Secretary. William G. Reed, President.'' It was assigned to Gem State Lumber Company, ''1st day of June, 1928. (signed) William G. Reed. Witnessed by (signed) A. O. Sheldon.'' Mr. Sheldon testified that the assignment of certificate No. 36 was made on the date given therein. Mr. Reed admitted his signature but asserts that he signed it in May, 1929, some time after the

eighth day of May, 1929. He further testified that at the time of signing the certificate it was in the possession of the Gem State Lumber Company; that said certificate No. 36 was never in his (Reed's) custody; that it was sent when issued to Gem State Lumber Company. The testimony of Mr. Pettit, secretary and general manager of the Gem State Lumber Company, substantiates that of Mr. Merrill (*supra*) as to the actual delivery of the shares as recited in the pledges on the eighteenth day of May, 1928, and their delivery to Mr. Merrill to be sent to California. He also testified that the $9,000 pledge was signed May 18, 1928, in the afternoon, and that all three pledges were kept by the company as assets thereof, and that the two certificates, Nos. 32 and 36, were at all times kept in the custody of the company.

█ Resolving all conflicts in favor of respondents, we must find that the evidence shows without dispute that on May 18, 1928, Reed being owner and holder (through assignment *in blank* from the Beverly Building & Securities Corporation) of the three stock certificates, Nos. 24, 25 and 28, totaling 115 shares of stock in the Torrance Brick Company, and owner and holder of stock certificate No. 32 for three shares of the same stock (assigned to him, Reed, by V. Davis) did deliver physically to the officers of the Gem State Lumber Company these four certificates of stock (on May 18, 1928); that these certificates were sent to the Torrance Brick Company and thereafter the date of "25th of May, 1928" was added to the assignment on the back of each certificate; that these certificates were repasted to the stubs and that certificate No. 36 was then and there issued and immediately thereafter mailed to the Gem State Lumber Company; that while it was in their custody, Mr. Reed transferred this certificate No. 36 by assignment to Gem State Lumber Company on the twenty-sixth day of May, 1930, after the levy of attachment had been made. It further appears without conflict that the pledge of the original stock security for the $4,000 debt had been made and the exchange of the original three certificates for certificate No. 36 had also been made before May 8, 1929, and the pledge for the $4,000 debt and certificate No. 36 were both in the custody of Gem State Lumber Company at the time of the levy of the attachment. Conceding that certificate No. 36

had not been assigned at that time, and that the notice contained in the letter of June 5, 1928, was not transmitted until May 28, 1929, it is evident that the notification of the pledge was put upon the stub of No. 36 in the company books before the sale took place in March, 1930. Therefore appellant Gem State Lumber Company was on the eighth day of May, 1929 (when the levy of attachment was served), the holder and in the actual possession as pledgee of certificate of stock No. 36 for 115 shares of stock of the Torrance Brick Company as security for the $4,000 debt, and before the time of the sale in March, 1930, the notice of its claim as pledgee of this certificate No. 36, was placed upon the books of the Torrance Brick Company, and certificate No. 36 had been assigned to the Gem State Lumber Company by Mr. Reed.

As to the claim that the $4,000 pledge had been absorbed by the $9,000 pledge made after the attachment had been levied, we think there is nothing in the record upon which to base such a conclusion. The only evidence on the subject is given by the officers of the Gem State Lumber Company, who claim to have kept all three pledges as assets of the company.

We are of the opinion that the evidence introduced by respondent to the effect that the Gem State Lumber Company did not inquire and knew nothing of the value of the stock cannot be accepted as substantial evidence that the pledge was not given and accepted. Respondent also claims that a conversation between Pettit and McCook, held on May 6, 1929, is an inference that no such indebtedness existed, and therefore there could be no pledge. This evidence, we think, is correctly analyzed by appellant as follows: ''Pettit, the manager of Gem State Lumber Company, testified that Mc-Cook, president of California First National Bank of Long Beach, referring to Reed, asked: 'Does he owe you anything?' And that he, Pettit, replied, 'No.' That in answering McCook in the negative, he meant only that Reed was not indebted to him personally and that he had no reference to Gem State Lumber Company. McCook, on the other hand, apparently took Pettit's reply to mean that Reed was not indebted to Gem State Lumber Company, but he testified that he could not recall whether he 'specified particularly the Gem State' when asking about Reed's debts.

The most that can be said for this testimony is that the two gentlemen obviously misunderstood each other."

The foregoing evidence, referred to by respondent, does not raise a substantial conflict, nor, as we view it, even an inference, as against the uncontradicted testimony of the other witnesses as above set forth, and the finding of the court that the $4,000 debt from Reed to the Gem State Lumber Company was incurred on May 18, 1928; that the promissory note and the pledge agreement to cover the same were executed and delivered together with the stock certificates properly indorsed on the same date. This view is supported by the following decisions: *Field* v. *Shorb*, 99 Cal. 661 [34 Pac. 504]; *Estate of Baldwin*, 162 Cal. 471 [123 Pac. 267]; 10 Cal. Jur., p. 1173, sec. 384, and cases therein cited.

■ Respondent claims that on May 18, 1928, defendant Reed was not the owner of the certificates of stock of the Torrance Brick Company because they were not assigned to him until the twenty-fifth day of May, 1928, by the Beverly Building and Securities Corporation. It is a sufficient answer to say that the uncontradicted evidence shows that on the eighteenth day of May, 1928, the certificates, indorsed in blank, were in the possession of Reed, which was sufficient to place the title in Reed as of that date. (*Dover* v. *Pittsburg Oil Co.*, 143 Cal. 501 [77 Pac. 405]; *Cahlan* v. *Bank of Lassen County*, 11 Cal. App. 533 [105 Pac. 765]; *Mancini* v. *Setaro*, 69 Cal. App. 748 [232 Pac. 495]; 6 Cal. Jur., p. 790, sec. 195.) ■ It is also contended that the assignment was to Reed as "Trustee". The mere addition of the word "Trustee", after the name of a person to whom stock is transferred, raises no implication that he has no authority to sell or hypothecate it in the usual course of business. (*Brewster* v. *Sime*, 42 Cal. 139; *Thompson* v. *Toland*, 48 Cal. 99; *Fletcher* v. *Kidder*, 163 Cal. 769 [127 Pac. 73]; *Northwestern P. C. Co.* v. *Atlantic P. C. Co.*, 174 Cal. 308 [163 Pac. 47].)

The judgment must be, and it is hereby, reversed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 24, 1933.