[S. F. No. 7048. Department One.—January 29, 1917.]

## NORTHWESTERN PORTLAND CEMENT COMPANY (a Corporation), Appellant, v. ATLANTIC PORTLAND CEMENT COMPANY (a Corporation), et al., Defendants; AMERICAN BRIDGE COMPANY OF NEW YORK (a Corporation), Respondent.

CORPORATION—STOCK IN NAME OF "TRUSTEE"—NOTICE OF REAL OWNERSHIP.—In this state it is established as a rule of property that the affixing of the word "trustee" to the name of the holder of shares of stock in a corporation does not, in and of itself, impart to anyone dealing with such holder notice that he is not the owner of the stock, or, at least, that he has not authority to sell or hypothecate it.

ID.—NOTICE—FACTS PUTTING ON INQUIRY.—Whether a party has notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and whether by prosecuting such inquiry he might have learned of such fact, are questions of fact to be determined by the jury or the trial court.

ID.—PLEDGE OF STOCK STANDING IN NAME OF "TRUSTEE"—FINANCIAL EMBARRASSMENT OF PLEDGOR—SECRECY OF PLEDGE.—The circumstances that the pledgor of stock standing in his name as trustee was in financial difficulties, and requested the pledgee to keep secret the fact of the pledge, do not necessarily import notice to the pledgee sufficient to put him on inquiry as to the true ownership of the stock, or prevent the conclusion that the pledgee acted in good faith and in the reasonable belief that the pledgor was the actual owner and authorized to pledge it.

Id.—Pledge of Stock Vests Legal Interest—Failure to Enter on Corporate Books.—A pledge of shares of corporate stock, although it does not transfer title to the property, vests in the pledgee a "special property" therein which is a legal interest. This legal interest becomes vested under the pledge by delivery of a certificate for the stock duly indorsed, without entry in the corporate books.

Id.—Estoppel of Real Owner—Superior Equities of Pledgee.—The real owner of corporate stock, who has permitted a third person to hold the apparent title to, and power of disposition over the shares, is estopped from asserting its title as against a *bona fide* pledgee of the apparent owner. Under such circumstances, the equities of the pledgee are superior to those of the real owner.

Id.—Pledgee may be Bona Fide Purchaser.—The rule protecting *bona fide* purchasers is applicable to a pledgee of corporate stock, notwithstanding the transfer is not entered on the books of the corporation.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Morrison, Dunne & Brobeck, and George J. Hatfield, for Appellant.

J. C. Campbell, Walter Shelton, and J. C. Campbell, Weaver, Shelton & Levy, for Respondent.

SLOSS, J.—The plaintiff brought this action to establish its ownership of, and to recover, two thousand eight hundred shares of the capital stock of Bellingham Bay and British Columbia Railroad Company, evidenced by certificate No. 67. The action was dismissed as to all of the defendants except American Bridge Company of New York, which claimed to hold said certificate and shares as a pledge. Under stipulation of the parties, the two thousand eight hundred shares of stock were sold for twenty-eight thousand dollars, and the purchase price deposited in savings banks to abide the final outcome of this litigation. The trial resulted in a judgment that defendant, American Bridge Company, was entitled to the payment of the sums so deposited, with interest thereon. Plaintiff appeals from the judgment and from an order denying its motion for a new trial.

Prior to the transaction which led to this suit, William J. Dingee was the principal stockholder in, and the president of, several corporations engaged in the manufacture of cement. Among these were the Northwestern Portland Cement Company, the plaintiff, Atlantic Portland Cement Company, a California corporation, Atlantic Portland Cement Company, a Pennsylvania corporation, and Santa Cruz Portland Cement Company. Bellingham Bay and British Columbia Railroad Company was a corporation operating a line of railroad in the state of Washington. Two thousand eight hundred and eighty-one shares of its stock stood on the books of said railroad company in the name of "William J. Dingee, trustee," and certificates had been issued to him by that designation. In February, 1908, the Atlantic Portland Cement companies were indebted to the defendant, American Bridge Company, in the sum of $247,000, or thereabouts, a balance due for labor and materials furnished to said Atlantic companies in the construction of their plant in Pennsylvania. Payment of this obligation had been guaranteed by William J. Dingee and I. J. Bachman. The bridge company was pressing for payment of the account, and on the 10th of February, 1908, an agreement was entered into which provided that in consideration of the extension of time for the payment of said obligation, the Atlantic companies, Dingee and Bachman agreed to turn over and deliver to the bridge company certain securities, consisting of bonds of various companies and two thousand eight hundred shares of the capital stock of Bellingham Bay and British Columbia Railroad Company. The securities were delivered in pursuance of this agreement, a certificate for two thousand eight hundred shares of stock in the railroad company having been issued in the name of "William J. Dingee, trustee," and indorsed by Dingee in that form.

The complaint alleged that the plaintiff was the real owner of said stock, and that Dingee held the same in trust for plaintiff, and had no real interest therein except as such trustee; that the bridge company, at the time of taking said certificate, had full knowledge and notice that said certificate and the shares of stock evidenced thereby, were not owned by Dingee, that Dingee had no right or authority to deliver the same to the bridge company, and that the plaintiff was the owner of such stock. These allegations were denied by

the answer. The court made no finding on the issue of plaintiff's ownership, but found that the bridge company had no knowledge or notice whatsoever of any ownership, equity, right, or claim in said certificate or shares by plaintiff or by any person except Dingee, and had no knowledge or notice of any fact sufficient to put it on inquiry as to any right or claim of plaintiff or of any other person than said Dingee.

The appellant's main attack is upon the finding that the bridge company took the stock in pledge without notice or means of knowledge of plaintiff's equitable claim. Whatever may be the law in other jurisdictions, it has long been settled in this state that the affixing of the word "trustee" to the name of the holder of shares of stock in a corporation does not, in and of itself, impart to anyone dealing with such holder notice that he is not the owner of the stock, or, at least, that he has not authority to sell or hypothecate it. (*Brewster* v. *Sime*, 42 Cal. 139; *Thompson* v. *Toland*, 48 Cal. 99; *Fletcher* v. *Kidder*, 163 Cal. 769, [127 Pac. 79].) Even if we were inclined to question the soundness of these decisions, they must be considered as establishing a rule of property, on the faith of which, no doubt, many transactions have been entered into. Under these circumstances, a change of decision is precluded by the doctrine of *stare decisis.*

It is, however, argued by the appellant that there were other circumstances which, together with the fact that the stock stood in the name of William J. Dingee, trustee, force the conclusion that the bridge company took with constructive notice of plaintiff's claims. It appears that the demand of the American Bridge Company against the Atlantic companies was long overdue. Mr. Connell, the treasurer of the bridge company, came to San Francisco to obtain payment or satisfactory security. Together with Mr. J. C. Campbell, attorney for the bridge company, he entered into negotiations with Mr. Dingee, who, apparently, was regarded as the person principally interested in the ownership and management of the several cement companies. Mr. Dingee owned certain real estate in Redwood City. Mr. Campbell, acting for the bridge company, demanded that Mr. Dingee give the bridge company a mortgage on this property. To this demand Mr. Dingee, under the advice of his counsel, refused to accede, taking the position that the recording of a mortgage on his property would seriously injure his credit and thus be detrimental to

his interests.   Mr. Campbell stating that, unless the mortgage were given, the bridge company would institute suit, Mr. Dingee said that he had other security which he could furnish. He thereupon offered to give to the bridge company, as collateral for its claim, the bonds above mentioned, together with the two thousand eight hundred shares of Bellingham Bay and British Columbia Railroad Company stock.   This was accepted, and the agreement providing for the extension of payment and the pledge of these securities was entered into.   The securities were delivered, and they were held thereafter by the bridge company as security for its claim, a large part of which remains unpaid.   Mr. Dingee, at the time of offering these securities, requested Mr. Connell to say nothing about the fact of his having offered or given them.   It is upon these facts, coupled with the further circumstance that the bridge company knew that Dingee was president of the plaintiff, Northwestern company, and of various other cement companies, that the appellant makes its claim that the creditor took the security with notice.   There is no suggestion that any officer or agent of the defendant was actually aware that plaintiff was interested in the stock.   The testimony of those who took part in the transaction is that they assumed and believed that Dingee owned the shares, or that he had the right to pledge them.   We need not here decide whether a trial court or a jury might have found that the circumstances were such as to put the bridge company upon inquiry.   The finding was the other way.   Whether a party has notice of "circumstances sufficient to put a prudent man upon inquiry as to a particular fact," and whether "by prosecuting such inquiry, he might have learned such fact" (Civ. Code, sec. 19), are themselves questions of fact to be determined by the jury or the trial court.   (*Brewster* v. *Sime,* 42 Cal. 139; *Thompson* v. *Toland,* 48 Cal. 99; *Renton, Holmes & Co.* v. *Monnier,* 77 Cal. 449, 456, [19 Pac. 820].)   Findings of ultimate facts are binding upon appeal, not only when there is a direct conflict regarding the probative facts, but when those facts are fairly susceptible to opposing inferences.   The circumstances upon which the appellant relies, mainly, to show notice are the form of the certificate, the fact that Dingee was in financial difficulties, and that he requested that the transaction remain undisclosed.   Certainly it cannot be said that these circumstances would necessarily raise a suspicion that Dingee was

not the owner of the stock which he was asserting his right to pledge. In view of the holding in *Brewster* v. *Sime, supra,* it may well be doubted whether any weight whatever is to be attached to the form of the certificate, either alone or in connection with the other facts. But granting that this circumstance may be regarded in connection with others, we find nothing in the whole transaction which would prevent the conclusion that the bridge company acted in entire good faith and in the belief, reasonable under the circumstances, that Dingee was the actual owner of the stock and authorized to pledge it. It is not unusual for a debtor to possess and furnish security for a claim, although he may be unable to pay it at maturity. Nor is a request for secrecy regarding the transaction necessarily inconsistent with an honest purpose on the debtor's part, or good faith on that of the creditor.

Under the foregoing views, the failure of the court to find upon the issue of plaintiff's beneficial ownership (which is assigned as error), becomes immaterial. The defendant's rights depend upon its acquiring the stock in good faith from the holder and apparent owner, and such rights are superior to those of the owner of an undisclosed equity.

The appellant makes the point that the rule protecting *bona fide* purchasers is applicable only where the later claimant has acquired a legal, and not a mere equitable, title. (*Dupont* v. *Werthman,* 10 Cal. 354, 368; *Taylor* v. *Weston,* 77 Cal. 534, 537, [20 Pac. 62].) It is urged that the bridge company acquired no more than an equitable right in the shares of stock because (a) it was only a pledgee, and (b) the transfer to it in pledge was not entered on the books of the corporation. On the first proposition it is said, and truly said, that a pledge does not transfer title to the property. (Civ. Code, sec. 2888; *Haber* v. *Brown,* 101 Cal. 445, 452, [35 Pac. 1035].) But it does vest in the pledgee a "special property" in the chattels pledged (*Williams* v. *Ashe,* 111 Cal. 180, [43 Pac. 595]), and this is a legal interest. (*Wells* v. *Archer,* 10 Serg. & R. (Pa.) 412, [13 Am. Dec. 682]; *Douglas* v. *People's Bank,* 86 Ky. 176, [9 Am. St. Rep. 276, 5 S. W. 420].) Nor is it correct to say that a legal title or right is not vested under a sale or pledge of stock by delivery of a certificate duly indorsed without entry in the corporate books. The provision of section 324 of the Civil Code is that shares of stock "may be transferred by indorsement by signature of the proprietor,

his agent, attorney, or legal representative, and the delivery of the certificate; but such transfer is not valid, except as to the parties thereto, until the same is . . . entered upon the books of the corporation. . . ." The effect of this provision, as construed by this court, is analogous to that of the statutes with reference to the recording of instruments affecting real property. The delivery of the indorsed certificate passes title, but such title cannot be asserted against purchasers or encumbrancers who have no notice of the transfer. (*Ashton* v. *Zeila M. Co.*, 134 Cal. 408, 410, [66 Pac. 494].) "It is not the law of this state, nor is it the law generally, that a transfer upon the books of the corporation is essential to the creation of a valid pledge." (*Spreckels* v. *Nevada Bank*, 113 Cal. 272, 278, [54 Am. St. Rep. 248, 33 L. R. A. 459, 45 Pac. 329]; *Weston* v. *Bear River etc. Co.*, 6 Cal. 425; *People* v. *Elmore*, 35 Cal. 653.)

But beyond all this, if we assume that defendant's rights are equitable merely, the equities of the parties are not equal. The defendant having taken the stock in good faith from the owner of the legal title, the appellant, which had permitted Dingee to hold the apparent title to, and power of disposition over, the shares, is estopped from asserting its title as against the defendant. (*Fowles* v. *National Bank of California*, 167 Cal. 653, [140 Pac. 271]; *McNeil* v. *Tenth National Bank*, 46 N. Y. 325, [7 Am. Rep. 341].)

It may be added that in the various cases (*Brewster* v. *Sime*, 42 Cal. 139; *Thompson* v. *Toland*, 48 Cal. 99; *Arnold* v. *Johnson*, 66 Cal. 402, [5 Pac. 796]; *Fowles* v. *National Bank of California*, 167 Cal. 653, [140 Pac. 271]), in which this court has upheld the right of a *bona fide* pledgee to hold stock as against the undisclosed beneficial owner, the pledge had apparently been accomplished by a mere delivery of the indorsed certificate without transfer upon the corporate books. It is true that the precise point here urged, i. e., that the pledgee was the holder of a mere equity, was not specifically considered, but the decision, in each case, amounted to a ruling that the delivery of the indorsed certificate was sufficient to vest the pledgee with a right which he could assert against one who claimed to be the real owner of the shares standing in the name of the pledgor.

The judgment and the order appealed from are affirmed.

Shaw, J., and Lawlor, J., concurred.