[Civ. No. 6145. Third Appellate District.—January 2, 1940.]

R. V. WEST, Plaintiff and Appellant, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Defendants and Appellants.

Ware & Ware for Plaintiff and Appellant.

Thomas J. Straub, W. R. Dunn, Eustace Cullinan and Jerome D. Peters for Defendants and Appellants.

THE COURT.—This is an action to recover damages arising out of alleged fraudulent representations made by defendants with respect to the sale of shares of stock. The issues were tried before the court, findings were duly entered in favor of plaintiff upon all of such issues, and judgment was rendered against defendants in the sum of $1653.66. The appeal is taken from the judgment.

Plaintiff also appeals from "that part and portion of said judgment in which the trial court found, determined and adjudged that plaintiff was not entitled to recover interest from defendants on interest payments, from the respective dates of payment, paid by plaintiff and received by defendants on account of the purported purchase of stock of defendant Western Canal Company".

This case is companion to *Goodspeed et al.* v. *Great Western Power Co. et al.* (Civ. No. 6011), decided by this court on the 8th day of June, 1939 (33 Cal. App. (2d) 245 [91 Pac. (2d) 623, 92 Pac. (2d) 410]). It arises out of the same general situation, and presents the same issues, with the exceptions hereinafter noted. We refer to that opinion for a statement of facts. We also adhere to that opinion upon all questions expressly disposed of or necessarily involved therein. Only questions not raised in that case will receive our attention here.

The questions of the *right* of plaintiff to recover, generally, upon substantially the same record, and the right to interest, are fully disposed of in her favor in the Goodspeed case mentioned above, with the sole exception of the contention here made that such recovery is barred by the statute of limitations. Since the argument of this cause and with the permission of the court, defendants have also filed a "statement of constitutional grounds for not following the Goodspeed case", in which case, however, that question was not presented for our consideration.

It is the contention of defendants that this action is barred by the provisions of subdivision 4, section 338 of the Code of Civil Procedure, which reads as follows:

"An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

The fraudulent representations which constitute the gravamen of the action were all made on or prior to January 1, 1925, while the action was not commenced until November 14, 1932. It thus appears that the complaint was not filed within the three-year period designated by the statute quoted above. The general rule governing such a situation is stated in the case of *Lady Washington C. Co.* v. *Wood,* 113 Cal. 482 [45 Pac. 809], to be as follows:

"The right of a plaintiff to invoke the aid of a court of equity for relief against fraud, after the expiration of three years from the time when the fraud was committed, is an exception to the general statute on that subject, and cannot be asserted unless the plaintiff brings himself within the terms of the exception. It must appear that he did not discover the facts constituting the fraud until within three years prior to commencing the action. This is an element of the plaintiff's right of action, and must be affirmatively pleaded by him in order to authorize the court to entertain his complaint. 'Discovery' and 'knowledge' are not convertible terms, and whether there has been a 'discovery' of the facts 'constituting the fraud', within the meaning of the statute of limitations, is a question of law to be determined by the court from the facts pleaded. As in the case of any other legal conclusion, it is not sufficient to make a mere averment thereof, but the facts from which the conclusion follows must themselves be pleaded. It is not enough that the plaintiff merely avers that he was ignorant of the facts at the time of their occurrence, and has not been informed of them until within the three years. He must show that the acts of fraud were committed under such circumstances that he would not be presumed to have any knowledge of them—as that they were done in secret or were kept concealed; and he must also show the times and the circumstances under which the facts constituting the fraud were brought to his knowledge, so that the court may determine whether the discovery of these facts was within the time alleged; and, as the means of knowledge are equivalent to knowledge, if it appears that the plaintiff had notice or information of circumstances which

would put him on an inquiry which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts.''

The following appears in 46 C. J., pages 546, 547, with reference to the application of the foregoing rule:

''As to what will be a sufficiency of facts to excite inquiry no rule can be very well established. Each case depends upon its own facts or circumstances. There is a great inconsistency in the cases upon this point. A few guiding principles, however, have been recognized by the courts, and are here discussed. It may be premised that the means of knowledge must be available and of such character that a prudent man might be expected to take advantage of them. There must appear in the nature of the case such a connection between the facts discovered and the further facts to be discovered that the former may be said to furnish a reasonable and natural clue to the latter. Circumstances that are dubious or equivocal are not sufficient to take the place of actual notice. But a notice sufficient to put a person on inquiry need not contain complete information on every fact material to his knowledge. The circumstances must be such that the inquiry becomes a duty, and the failure to make it a negligent omission. It is only when inquiry becomes a duty that knowledge of facts will in law put a person on inquiry to ascertain the ultimate facts of which he is presumed to have notice. The rule applies when the circumstances of the case impose the duty of a reasonable inquiry, even though it is not required by the express mandate of the statute. The knowledge which one obtains, and the possession of which is urged as being sufficient, to require further inquiry by such person, must be directly related to the ultimate knowledge in question; to charge a party with notice of a fact which could have been ascertained by inquiry, the circumstances known to him must have been such as ought reasonably to have suggested inquiry, and led him to inquire. The rule imputes notice only of those facts that are naturally and reasonably connected with the fact known, and of which the known fact or facts can be said to furnish a clue. It does not impute notice of every conceivable fact and circumstance however remote which might come to light by exhausting all possible means of knowledge.''

It is also the law that "he who practices bad faith ought not to be permitted to invoke the doctrine of constructive or imputed notice in aid of his wrongdoing, unless negligence on the part of the injured party has supervened". (46 C. J., p. 545.) It has been held in this state that "the circumstances be such that the inquiry becomes a duty, and the failure to make it a *negligent omission*". (Italics ours.) (*Tarke* v. *Bingham*, 123 Cal. 163, at p. 166 [55 Pac. 759].) "The known facts must be such that to a person of ordinary care and prudence further inquiry would not only be suggested but *imperatively demanded*, to the end that the truth with reference to the main fact may be disclosed." (Italics ours.) (*Zeller* v. *Milligan*, 71 Cal. App. 617, at p. 624 [236 Pac. 349].) The general rule laid down above is but a declaration of the equitable rule enunciated in section 19 of the Civil Code, as follows:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." (*Tarke* v. *Bingham, supra.*)

The trial court found that the action was not barred by the provisions of subdivision 4, section 338 of the Code of Civil Procedure. It further found more specifically upon the matter of discovery of the fraud as follows:

"That plaintiff never learned that any of the representations made by defendants, as herein found, were untrue and had no knowledge of the fact that either of said stock purchase contracts was invalid, unlawful or void or that defendants were public utilities, acting together in the furnishing of water for irrigation, as herein found, or that either of them was such public utility, until after December 21, 1931, and the facts, circumstances and reasons under and because of which plaintiff remained so in ignorance, and the circumstances under which plaintiff finally discovered the truth regarding said representations were and are as follows: That plaintiff, as contracting purchaser of stock in said Canal Company, or otherwise, never had any notice, or knew of the time of any stockholders' meeting of said Canal Company, and no report as to the condition or affairs of said Canal Company was ever made to plaintiff, or to any other stockholder, contracting purchaser of stock, water-user or

land owner; that only four stockholders' meetings of said Canal Company were ever held since its incorporation in the year 1915; that plaintiff never attended any stockholders' meeting of said Canal Company, and the only business ever transacted at any stockholders' meeting of said Canal Company was the election of directors and adoption of by-laws of said Company; that the total issued shares of capital stock of said Canal Company was 200,000 shares; that plaintiff never was a director or an officer of either of said defendants; that plaintiff never examined or was informed concerning any of the books, records, contracts or business of either of said defendant corporations, save as herein expressly found, and had no knowledge of the contents or character thereof, and had no reason or cause to think or suspect that said Canal Company was not a separate and independent corporate entity and a mutual water company, or that any examination of the records of said Canal Company would or could reveal that said company was not a mutual company, or that any of said representations so made by defendants were untrue; that the officers and directors of the Canal Company as such occupied a relationship of special trust and confidence in relation to plaintiff, at all times after the execution of the first of said contracts, and that as such contracting purchaser of stock, plaintiff reposed, and had a right to repose in said officers and directors special trust and confidence, and relied upon all of the acts and representations made by them; that the said representations and statements so made, as herein found, were made by and through directors and officers and agents of said Canal Company, and that plaintiff wholly believed said representations to be true, and that there was no fact or circumstance that plaintiff knew, or that came to his knowledge, notice or attention that caused him, or that would or should have caused him, or any person of ordinary prudence, to believe or suspect that any of said representations or statements made, as herein found, were untrue in any respect, until the time of the discovery of the true facts in regard thereto, as hereinafter found; that the articles of incorporation of said Canal Company at all times declared that it was a mutual water company; that the by-laws of said Canal Company at all times so pretended and asserted; that all of its stock certificates, stock purchase contracts and other official documents, communications and representations at

all times and continuously represented and averred that it was a mutual water company; that said representations were at all times well known to plaintiff, and were widely made and disseminated to the general public and to many other individuals situated similarly to plaintiff and to all persons served by defendants with water for irrigation, and were generally and universally accepted and believed by all of the same to be true, all of which was well known to plaintiff, and plaintiff believed the same to be true, and never doubted or suspected the truthfulness thereof until plaintiff discovered, as hereinafter found, that said representations and statements made by defendants were not true. That on March 31, 1930, a complaint was filed before the Railroad Commission of the State of California in the matter entitled, *Sarah E. Ludy,* complainant, v. *Great Western Power Company of California,* and *Western Canal Company,* defendants, being case No. 2847; that on December 21st, 1931, said Railroad Commission therein duly gave, made and entered its decision No. 24321, wherein and whereby it duly adjudged, determined and decreed that defendants herein were, and at all times in plaintiff's complaint mentioned have been public utilities for the furnishing of water for irrigation upon lands embracing and including said lands of plaintiff, and that defendant Canal Company, was not, and never had been a mutual water company, but had been, at all times, a public utility, and the wholly dominated and controlled subsidiary and the water transporting agency of defendant, Power Company, in the transportation and distribution of water of said Power Company for irrigation, as hereinbefore found; that plaintiff first learned of said proceedings and said determination of said Railroad Commission by hearing accounts thereof in street conversation shortly after said decision; that plaintiff was in no way a party to, or represented in said proceedings; that throughout said proceeding defendants continuously averred, pretended and claimed that each and all of said representations were true; that said decision and determination by said Railroad Commission on December 21st, 1931, was the first determination by said Commission, or by any commission, board or court, that said defendants were in truth and in fact public utilities, or that either of them was, a public utility in the distribution of water for irrigation; that shortly after plaintiff learned of said determina-

tion of said Railroad Commission, and because thereof, and in the month of February, 1932, he consulted Ware and Ware, the attorneys who represented him herein, relative to his rights as contracting stock purchaser in said Canal Company; . . . that plaintiff never learned or received notice, actual or imputed, of any circumstance or fact that would, could or did cause him, or any person of ordinary prudence, to believe or suspect that any of the representations and statements of the defendants, as herein found, were untrue in any respect, until the discovery of the facts concerning them after December 21, 1931, as herein found. That said attorneys informed plaintiff of all of the facts in reference to the relation of defendants and as to their status and operations as public utilities, all as alleged in plaintiff's complaint''.

"Whether one has notice of 'circumstances sufficient to put a prudent man upon inquiry as to a particular fact', and whether, 'by prosecuting such inquiry, he might have learned such fact', are themselves questions of fact to be determined by the jury or the trial court." (20 Cal. Jur., p. 240.) And as stated in *Northwestern P. C. Co.* v. *Atlantic P. C. Co.*, 174 Cal. 308–312 [163 Pac. 47]: "Whether a party has notice of 'circumstances sufficient to put a prudent man upon inquiry as to a particular fact', and whether 'by prosecuting such inquiry, he might have learned such fact' (Civ. Code, sec. 19), are themselves questions of fact to be determined by the jury or the trial court. (*Brewster* v. *Sime*, 42 Cal. 139; *Thompson* v. *Toland*, 48 Cal. 99; *Renton, Holmes & Co.* v. *Monnier*, 77 Cal. 449, 456 [19 Pac. 820].) Findings of ultimate facts are binding upon appeal, not only when there is a direct conflict regarding the probative facts, but when those facts are fairly susceptible to opposing inferences.''

Defendants contend that the evidence is insufficient to support the findings mentioned above. We must therefore scrutinize the record in the light of the rule that: "It is only when the question is presented to this court as one of law under the contention that the evidence is insufficient to support the verdict or finding that this court will examine the evidence to this sole end, and when it is satisfied that substantial evidence exists to support the verdict or finding, its examination ceases at once." (*Estate of Moore*, 162 Cal. 324, 326 [122 Pac. 844].)

■ Defendants point out several circumstances which they contend had the effect of putting plaintiff upon inquiry in respect to its fraudulent scheme. The first is the fact that plaintiff was a stockholder in the Western Canal Company, a corporation. As such, they state, it was his duty to inspect the books of the company where the minutes would have shown the control of the Bankers' Trust Company through the Power Company. They further state that *if* plaintiff had visited the offices of the Western Canal Company in San Francisco prior to 1930, it "would have shown that they were in the offices of the Power Company (the name of the Western Company not even appearing at the entrance). Those dealing with the Western Company there had to go to the Power Company." It is at once apparent that there are no facts brought home to plaintiff which would put plaintiff upon such an inquiry. They are facts which, if known, might charge him with constructive notice of fraud. But it is not·claimed that plaintiff *knew* the above facts, and there is a total absence of any facts or circumstances known to plaintiff which would have caused him to go to the office of the Western Company in San Francisco. ■ As to the duty of plaintiff to examine the corporate books of the Canal Company, the same observation applies. Why should he examine the books? If facts were proven to show that he had information which would, under the rule, compel such examination, a different situation would have been presented. As to the duty of a stockholder to examine the books of a corporation under such circumstances, the rule in the case of *Lady Washington C. Co.* v. *Wood* (cited above), and relied upon by defendants, is radically curtailed in *Prewitt* v. *Sunnymead Orchard Co.,* 189 Cal. 723 [209 Pac. 995], and is there limited to those cases where the question of *estoppel* is concerned. In the latter case, Cook on Corporations is thus quoted:

"It is said in Cook on Corporations, 7th Ed., Sec. 731, p. 2620, referring specifically to actions by a stockholder against a corporation, that 'It is not incumbent upon the stockholder to keep himself informed as to the various acts of the corporation. He is not chargeable with knowledge merely because he might have ascertained the facts by an examination of the corporate books.' "

It is clear from the holding in the Prewitt case, that defendants' statement of the law on this question has no application to a case of this character.

■ The next fact relied upon as constituting a "discovery", within the meaning of the statute of limitations, was that he signed contracts with the Canal Company which recited that the latter would, upon payment made, "cause to be transferred" the specified number of shares, instead of providing that the Company would "issue" the stock. This, they urge, imparted knowledge to plaintiff that the stock had been issued to somebody else—otherwise, it would have been provided that the Canal Company would issue the stock to him. It would also, they state, charge plaintiff with knowledge that the Canal Company was not controlled by land owning water users exclusively. We fail to see how this legalistic quibble would put any layman upon such inquiry. Certainly, a failure to act upon it would not amount to a negligent omission.

The instances mentioned above, and relied upon as calling for a finding that plaintiff had constructive notice of fraud are the only ones which have any semblance of merit. Several others are mentioned by defendants, but we do not deem them worthy of discussion. Considering all of them, we cannot say that as a matter of law plaintiff had constructive notice of the fraud practiced upon him, and we are of the opinion that the findings mentioned have substantial support in the record.

It may be observed from the opinion in the Goodspeed case that *indicia* of fraud are numerous and varied in these cases. A number of them, when considered separately, would not point to a fraudulent act. Under such circumstances one of such badges of fraud would not give constructive knowledge of the whole fraudulent scheme to operate a public utility under the guise of a mutual water company and sell stock in the latter under the representation that it was a lawful mutual company.

■ There is another reason why the statute of limitations does not apply here where fraudulent representations of fact constitute the cause of action, and where, as the trial court found, there was a positive representation of certain facts by defendants. The rule governing such a situation is

thus expressed in *Teague* v. *Hall,* 171 Cal. 668, p. 670 [154 Pac. 851] :

"Similarly in Pomeroy, Equity Jurisprudence, section 896, it is said that 'whenever a positive representation of fact is made, the party receiving it is, in general, entitled to rely and act upon it, and is not bound to verify it by an independent investigation. Where a representation is made of facts which are or may be assumed to be within the knowledge of the party making it, the knowledge of the receiving party concerning the real facts, which shall prevent his relying on and being misled by it, must be clearly and conclusively established by the evidence. The *mere existence of opportunities* for examination, or of sources of information, is not sufficient, even though by means of these opportunities and sources, in the absence of any representation at all, a constructive notice to the party would be inferred; the doctrine of constructive notice does not apply where there has been such a representation of fact.' This view of the law has been repeatedly declared in the decisions in this state. In *Ruhl* v. *Mott,* 120 Cal. 668, 676 [53 Pac. 307], the court says, 'It is true that where one is justified in relying, and in fact does rely upon false representations, his right of action is not destroyed because means of knowledge were open to him. In such a case, no duty in law is devolved upon him to employ such means of knowledge.' The same doctrine is declared in *Bank of Woodland* v. *Hiatt,* 58 Cal. 234; *Wenzel* v. *Schulz,* 78 Cal. 221 [20 Pac. 404] ; *Morris* v. *Courtney,* 120 Cal. 63 [52 Pac. 129] ; *Dow* v. *Swain,* 125 Cal. 674, pp. 683, 684 [58 Pac. 271] ; *Maxon-Nowlin Co.* v. *Norswing,* 166 Cal. 509, 512 [137 Pac. 240] ; *Eichelberger* v. *Mills L. & W. Co.,* 9 Cal. App. 628 [100 Pac. 117]."

The same rule was applied to constructive notice by this court in the case of *Edwards* v. *Sergi,* 137 Cal. App. 369 [30 Pac. (2d) 541].

 With permission of the court defendants have filed a "statement of Constitutional grounds for not following the decision of *Goodspeed* v. *Great Western Power Co.*" (that case is cited above). No authorities are cited upon the precise question, except section 1 of article XIV of the Constitution of the United States. This is the first time that such a question has been presented in this case and the companion cases before this court. It was not raised in the Good-

speed case at all. The matter has never been briefed. It is contended that equal protection of the law was denied defendants, in that the trial court found that they had knowledge of the falsity of their representations, while it also found that plaintiff did not have such knowledge. They state that the only possible finding justified by the record would be that both parties had equal knowledge, where means of knowledge was equally available to each party. The second point urged also has to do with a matter of evidence. No authority has been cited which holds that a finding against one litigant, and necessarily against the other, constitutes, under such circumstances, a violation of the constitutional provision mentioned above, guaranteeing the equal protection of the law. Assuming that the contention can be raised at this time, we are of the opinion that it lacks substantial merit.

The appeal of appellant West is based upon the contention that the trial court should have allowed him interest upon interest payments made on the fraudulent contracts. That question was fully disposed of in his favor in the Goodspeed case.

Upon the authority of the Goodspeed case, and in view of what we have here held, it is ordered that the judgment be, and it is hereby reversed, and that the cause be remanded for retrial, upon the sole issue of the amount of damages due, in accordance with the views expressed, each party to pay his own costs on appeal.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 1, 1940, and an application by defendants and appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 29, 1940.