[Civ. No. 15357.   Second Dist., Div. One.   Feb. 21, 1947.]

H. F. METCALF, as Trustee, etc., Respondent, v. JOHN DREW, et al., Appellants.

Buel R. Wood, Philbrick McCoy, J. A. Charlesworth, Samuel DeGroot and Aaron Sapiro for Appellants.

Bailie, Turner & Lake and Allen T. Lynch for Respondent.

DORAN, J.—The events leading up to this litigation consist of the adjudication in bankruptcy of the F. P. Newport Corporation, Ltd. on January 12, 1937, and the appointment of the respondent, H. F. Metcalf as trustee on March 19, 1937. At the time of adjudication the Newport Corporation owned certain North Hollywood acreage described in the complaint, together with other tracts thereto adjoining. The trustee Metcalf and appellant Charlesworth were both licensed real estate brokers and during the times involved herein occupied the same offices at 115 West 7th Street in Los Angeles under an "informal" arrangement, acting, however, independently of each other. An oral agreement was entered into under which Charlesworth was to receive a commission of 5 per cent upon finding a buyer for the acreage, and on November 28, 1941, Charlesworth submitted to the trustee a written offer to purchase the property for $625 per acre, or a total purchase price of $87,135, the proposed purchaser being John Drew. The offer was accepted by the trustee and thereafter the sale to Drew was confirmed in the bankruptcy court on January 29, 1942, resulting in an escrow whereby Drew was to pay $10,000 down and execute a trust deed for the balance. The trust deed contained provisions for a subdivision program to be carried out on the property.

The complaint herein was filed by the trustee to recover secret profits, for damages, and equitable relief, and after alleging consummation of the bankruptcy sale of January 29, 1942, hereinbefore referred to, avers that the appellant Charlesworth, on or about December 11, 1941, received from H. H. Hagge and Lilly J. Hagge, a written offer to purchase the acreage for the sum of $174,270, which offer was accepted by John Drew about January 16, 1942. Paragraph XI of the complaint alleges that the broker Charlesworth did not communicate the Hagge offer to the trustee or to the bankruptcy court, and that the trustee had no knowledge thereof until about August 4, 1943, a few days previous to the filing of the complaint. It is further alleged that Charlesworth and Drew conspired to "fraudulently conceal from the plaintiff and said Bankruptcy Court the fact that the defendants Hagge were willing to pay . . . $174,270.00, and to prevent said defendants Hagge from acquiring knowledge of . . and from becoming bidders for said property at said bankrupt sale thereof, . . . all to the damage of plaintiff and said bankrupt estate and the creditors thereof in the sum of $87,135." Charlesworth is alleged to have represented to the trustee Metcalf that the offer made by Drew "was the highest and best offer said Charlesworth had received or been able to obtain for the said property," whereas said representation was false in view of the Hagge offer of twice that amount, and known by the broker to be false. It appears that both Drew and Charlesworth testified at the bankruptcy hearing when the sale to Drew was confirmed.

The cause was duly dismissed as to all defendants other than Drew and Charlesworth, and was tried by the court without a jury, resulting in a judgment for the plaintiff-respondent. The trial court found that the Hagge offer of $174,270 was not communicated to the trustee or to the bankruptcy court, and that Drew and Charlesworth had conspired to conceal such offer for the purpose of deriving a secret profit from the sale at $87,135 to Drew as confirmed by the bankruptcy court. It was further found that the trustee had no knowledge of the larger offer; that the trustee had not been guilty of laches; that it was the duty of the appellant Charlesworth "to promptly and fully disclose to plaintiff (trustee) each and every offer received for said property or brought to his attention," and that "both defendants knew of the duty";

that "by reason of the fraud and deceit practiced on plaintiff by defendants," and of the conspiracy, concealment, etc., "plaintiff as the Trustee in Bankruptcy . . . has been damaged in the sum of $82,778.75."

Both Drew and Charlesworth gave notice of appeal, but the defendant Drew failed to perfect the appeal. On May 28, 1946, one E. A. Piller, assignee of the judgment secured by the trustee Metcalf, moved to dismiss the appeal on the ground that the same had become moot due to the fact that the judgment had been satisfied. The consideration for the assignment of the $82,778.75 judgment to Piller was only $10,000. Thereafter appellant Charlesworth filed a motion "for dismissal of appeal and action" alleging that Piller was merely the nominal owner of the judgment, Charlesworth's coappellant Drew being the real party in interest; further that if the appeal alone was dismissed, leaving the fraud judgment standing as against Charlesworth, the latter's real estate broker's license would probably be revoked on an order to show cause then pending. The District Court of Appeal denied both motions to dismiss, leaving the Charlesworth appeal to be "determined upon its merits," (*Metcalf* v. *Drew*, 75 Cal. App.2d 711 [171 P.2d 488] (August 8, 1946)), on the theory that Charlesworth had not acquiesced in the satisfaction of judgment, and that a mere dismissal of the appeal would amount to an affirmance of the judgment which would preclude the broker from defending against the charges of the Real Estate Commissioner. The merit of the Charlesworth appeal is the matter now under consideration.

According to the opening brief, "Appellant's attack on the finding is upon the failure of evidence to support it, and its failure to find upon the material issue, raised by the evidence, that the Trustee, having the means of knowledge, was possessed of that knowledge which he would have actually known had he investigated." In support of this contention appellant points to evidence tending to show that the trustee had been in the real estate business for forty years; that Hagge was known "to be in the deal in some way," and that the broker Charlesworth had stated that Hagge was to be the builder who was to improve the property. It is urged that the above and similar circumstances were such as to advise the trustee that Hagge was an interested party and

"of sufficiently grave a nature as to put a prudent man on his inquiry." In this connection it is to be noted that the trustee testified: ". . . so far as I am advised, I am dealing with one man (Drew). I have his check in my pocket. I have looked up his record. As far as I am concerned, he is amply good to carry out this deal providing he goes through with Hagge (the builder). Mr. Hagge will be tied into this deal because he is giving the lien and construction bond. I want this bond from him because he is going to do that work, he is going to do the street work and put in utilities and build houses." Further quoting from the trustee's testimony, appellant's brief points to the latter's statement that "When I found that Hagge was in the deal I was very much pleased. In fact, I don't think I would have gone through with this deal otherwise." The appellant then avers that "If the Trustee knew that Hagge was going to do the work outlined above he knew that Hagge had assumed the obligations of Drew under the trust deed." But this latter averment is clearly a *non sequitur;* the trustee's knowledge that Hagge was a builder who would be engaged in improving the vacant property carries with it no suggestion that the builder was a secret purchaser or interested otherwise than as a builder. Nor does such knowledge tend to create a suspicion, or evidence a clue, that Drew and Charlesworth might be embarked upon a conspiracy involving fraud and concealment for the purpose of securing a secret and unconscionable profit at the expense of the bankruptcy estate. Again it may be pointed out that both Drew and Charlesworth testified in bankruptcy court concerning the proposed sale to Drew but that apparently neither of these parties saw fit to mention the Hagge offer, the amount of which was twice that of the Drew offer submitted to the court.

The matter of constructive notice on the part of the trustee has received extended attention in appellant's brief. None of the cases cited, however, present sufficient analogy to the present situation to constitute authority for appellant's contentions. In *West* v. *Great Western Power Co.,* 36 Cal.App. 2d 403, 407 [97 P.2d 1014], is stated what appellant denominates as "the true rule to follow in cases of this character." Quoting from 46 Corpus Juris, pages 546, 547, the court in the West case said: "As to what will be a sufficiency of facts to ex-

cite inquiry no rule can be very well established. Each case depends upon its own facts or circumstances. . . . It may be premised that the means of knowledge must be available and of such character that a prudent man might be expected to take advantage of them. There must appear in the nature of the case such a connection between the facts discovered and the further facts to be discovered that the former may be said to furnish a reasonable and natural clue to the latter. . . . The circumstances must be such that the inquiry becomes a duty and the failure to make it a negligent omission." There can be no doubt that this is, as appellant says, the true rule. ▮ At page 411 of the same opinion, occurs the following language quoted from *Northwestern P. C. Co.* v. *Atlantic P. C. Co.*, 174 Cal. 308-312 [163 P. 47], particularly applicable to the present case: "Whether one has notice of 'circumstances sufficient to put a prudent man upon inquiry as to a particular fact', and whether by prosecuting such inquiry, he might have learned such fact [Civ. Code, § 19] are themselves questions of fact to be determined by the jury or the trial court. . . . Findings of ultimate facts are binding upon appeal, not only where there is a direct conflict regarding the probative facts, but when those facts are fairly susceptible to opposing inferences." That such a situation is presented by the present record cannot well be questioned. That record contains substantial evidence supporting the trial court's findings of fraud and concealment, and under the usual rule in such cases, it is not the function of an appellate court to weigh the evidence.

▮ "The merit of Appellant's complaint," quoting the opening brief, "lies not only in the attack on the finding as unsupported by the evidence but its silence upon whether or not the Trustee was put sufficiently upon his notice to have discovered the existence of Hagge's interest. The trial court ignored every circumstance that plainly pointed out to the trustee that some contract was in the offing." Appellant then cites *Powell* v. *Johnson*, 50 Cal.App.2d 680 [123 P.2d 875], and other cases holding that where a trial court renders judgment without making findings upon all material issues, the judgment cannot be sustained. Without disputing such rule, an examination of the findings fails to support appellant's contention as to its application in the instant case. The findings appear to cover all material issues in considerable detail,

and in Paragraph XIV thereof, the trial court finds "That plaintiff had no knowledge of said offers or either of them or of any offer of H. H. Hagge and Lilly J. Hagge to purchase said property or of said contract of March 7, 1942 until on or about August 4, 1943."

In reference to the matter of damages, appellant argues two points: (1), that "The evidence is wholly insufficient to show in what manner the trustee was damaged by the alleged conspiracy"; and (2), that "The damages awarded in this case were based solely on the possibility that a third party would bid a certain amount for the property involved and that the trustee would sell the same for that figure." There is merit in neither contention. What has already been said concerning the sufficiency of the evidence answers the first point,—namely, the record discloses substantial evidence to support the findings that by reason of the fraud and conspiracy of the defendants, the trustee and the bankruptcy estate suffered damage in the amount of $82,778.75. Nor does the record reveal anything to justify appellant's point that such damages were based solely, or at all, upon a possibility. On the contrary, the judgment was based upon a definite mathematical computation. The trial court found "That had plaintiff known the falsity of such representations and statements he would not have filed a petition for authority to sell or a petition for confirmation of sale (in the bankruptcy court) of said real estate to John Drew at any price below said sum of $174,270 (offered by Hagge)," and the trustee had so testified. It is quite true that "An award must be predicated on something more than mere speculation," as quoted by appellant from *Caspary* v. *Moore,* 21 Cal.App.2d 694 [70 P.2d 224], but the present case does not present a situation of that nature.

It is further urged that "The Court erred in finding that a confidential relationship existed between the appellant and trustee." In reference to this point appellant avers that there was no written contract between the trustee and Charlesworth and therefore no relation of principal and broker existed; that Charlesworth was Drew's broker; that "there was a dual agency, of which Metcalf was advised"; and that "Since the trial court treated the oral contract hiring Appellant as one that obeyed the statute, the Trustee having sold his property, is estopped from insisting that a confidential relationship existed between himself and the Trustee."

Charlesworth, it is claimed, "merely acted as a 'middleman' in bringing the minds of Drew and the Trustee together as to price. Under such a situation the authorities declare the rule to be that such agent may receive a commission from both parties and cannot be charged with receiving a secret profit," citing *Carothers* v. *Caine*, 38 Cal.App. 71 [175 P. 478]. Appellant then suggests that "the Trustee was selling and Appellant a buyer of the property and not an agent"; therefore that Charlesworth did not owe the trustee "the duty of full disclosure," as found by the trial court. As hereinbefore indicated, there is substantial evidence supporting the findings. Moreover, the present contentions seem to ignore all evidence not in appellant's favor, together with the reasonable inferences to be drawn from facts disclosed by the record. Such contentions are, in any event, without merit in respect to the instant case.

Under the heading, "The evidence is insufficient to prove a conspiracy or any overt act committed in consummation thereof," appellant again argues that the trustee "was entirely lacking in that degree of diligence entitling him to claim damages," and avers that "His failure to investigate the particulars in Hagge's 'building contract' falls into the category of gross negligence." Since this point has already received attention herein, contrary to the present contention, it is only necessary to add that an approval of appellant's position would, in effect, place upon the trustee, almost an absolute burden of detecting fraud and conspiracy, and excuse the perpetrators thereof in the event that the nefarious scheme was not discovered prior to its consummation. Obviously, such is not the law.

The judgment and order appealed from are therefore affirmed.

York, P. J., and White, J., concurred.