HALLEY, V. C. J., and WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.

DAVISON, J., dissents.

JACK BELL LUMBER COMPANY, a corporation, Plaintiff in Error,

v.

Glenn WILL and Jean H. Will, Defendants in Error.

No. 39761.

Supreme Court of Oklahoma.

March 12, 1963.

On Rehearing July 23, 1963.

Rehearing Denied July 23, 1963.

Looney, Watts, Looney, Nichols & Johnson, Tom D. Capshaw, Oklahoma City, for plaintiff in error.

Herbert L. Arthurs, Robert W. Blackstock, Harry M. McMillan, of Arthurs, Blackstock & McMillan, by Harry M. McMillan, Bristow, for defendants in error.

JOHNSON, Justice.

The parties herein appear in the same order as in the trial court and will be referred to herein under their trial court designations. In February, 1956, the defendants, Glenn Will and Jean H. Will, were the owners of Glen Acres Addition to Bristow, Creek County, Oklahoma. With the idea of developing this area, defendants entered into an oral agreement in May, 1956, with one W. F. Taylor whereby defendants agreed to convey to Taylor Site 8 in Lot 5 in said addition. Taylor was a building contractor, and under this oral agreement the defendants were to advance monies to Taylor for the construction of a house on such lot to be built by Taylor. This advancement was to be secured by a real estate mortgage to be subsequently executed by Taylor. Neither the deed nor the mortgage was executed at that time. The deed was thereafter executed and delivered on October 7, 1957, and recorded October 27, 1957. The first written agreement concerning the mortgage was executed August 29, 1956, at which time the first advancement of money under such mortgage in the amount of $5,000.00 was made. Although this mortgage was dated August 29, 1956, it was not recorded until February 6, 1957.

In the meantime, under the findings of the trial court, the construction of the house involved here was begun on July 12, 1956, at which time plaintiff, Jack Bell Lumber Company, began furnishing materials, and for which materials a lien is claimed by the plaintiff.

The priority of the two claimed liens, that of the defendants under their mortgage and that of plaintiff under its materialman's lien, present the issue for our determination. The proper perfection of the materialman's lien and the amount thereof are not in dispute.

The trial court found that the so-called equitable mortgage lien of defendants took priority over the lien of the plaintiff lumber company. The plaintiff's motion for new trial was overruled, from which action the plaintiff appeals.

Certain facts are not in dispute, among which may be listed:

1. The advancement of money by the mortgagee in an admitted amount to W. F. Taylor.

2. The furnishing of materials by plaintiff lumber company in an admitted amount.

3. The absence of any recorded instrument on the dates of the furnishing of materials which would constitute notice to the plaintiff lumber company of the mortgage claim of the defendants Will.

It must therefore be conceded that unless the plaintiff had actual notice of the existence or contemplated existence of the defendants' mortgage prior to its recordation, that plaintiff's claim is entitled to priority over the mortgage lien of the defendants.

The finding of the trial court upon this point is embodied in finding No. 7 as follows:

"(7) That from the evidence adduced herein, plaintiff lumber company had actual notice, or knowledge of such facts and circumstances to cause it to make a reasonable inquiry, that defendants Will not only were developing Glen Acres Addition but that they were advancing funds in the form of a loan to make the construction. Defendant builder Taylor testified positively that

he informed plaintiff's manager of such fact prior to commencement of such building and furnishing of materials. Plaintiff's manager Gilbert testified that the date when Taylor told him about Will furnishing money as a loan for the construction was when the house was roughed in and probably 75% complete, but this witness admitted he had state upon his deposition earlier that Taylor had told him of this fact but that the witness did not understand the question at the time of the deposition. That the issure or contention and difference upon the matter of knowledge or actual notice is resolved in favor of defendants Will and against plaintiff."

Therefore, the sole and determinative question in this case is, Does the evidence and all of the inferences to be drawn therefrom sustain this finding? This necessitates an analysis of the evidence on this point.

The deposition of Taylor, the contractor, the party who purchased the materials, and a witness for defendants, testified:

"Q. Can you tell us, please, sir, on what date you first approached Mr. Gilbert about furnishing materials for these houses?

"A. Yes. After I had made arrangements with Mr. Will he was to furnish money or make the construction loan to build the houses in Glen Acres. I talked to Mr. Gilbert and explained to him the arrangements that Mr. Will developing Glen Acres and that he was going to make a construction loan and that was—I am pretty sure that was on the date of June 1, 1956. That was when we staked the place off and broke ground and I know the first thing I usually do is buy a chalk line—"

And again:

"MR. McMILLAN: Q. And on that date you explained to Mr. Gilbert what your arrangements with Mr. Will were going to be?

"A. Yes, sir."

There were but two people, Mr. W. F. Taylor and Mr. Gilbert, the agent of the plaintiff, who had anything to do with the transaction and were therefore the only ones who could possibly have had knowledge concerning the imparting of notice.

The record shows that Mr. Gilbert in a deposition which was taken testified that W. F. Taylor said to him:

"* * * 'Well, what I would like to do, I want to build this house and Mr. Wills is going to furnish construction money and we are going to sell the house.' * * *"

These are the strongest bits of evidence in the entire record by the only two persons having any knowledge concerning the particular transaction. Let us look first at the particular purpose of Taylor in imparting this information. It is obvious that these statements were made for the express purpose of assuring Gilbert he would get his money in extending credit and dealing with him. They were not made to cause him to make an investigation. Further, at the time this information was imparted, the mortgage involved here was not in existence. It did not come into existence until August 29, 1956, and it was not recorded until the following year on February 6, 1957. An investigation by the plaintiff would have disclosed nothing on the records to show any such mortgage. We cannot reconcile the position of defendants that such information was a warning concerning the situation, when the very purpose of imparting it was to secure credit by an assurance of payment.

Let us assume that Gilbert had communicated with Will. What is the reasonable inference as to what Will would have said. It is probable that Will would have said, "Yes, I am advancing the money, but I expect to take a mortgage and in the event you are not paid, I will have the prior claim." We cannot conceive that such

would have been the result of such an inquiry. The only information to be expected under the circumstances would have been something to the effect, "Yes, I am financing the deal which will assure you of getting your money." We can assume no other inference from the situation before us. Will was as anxious to get the matter moving as Taylor. He expected to profit thereby. If he had advised that he was going to claim a prior lien, the whole deal would have been blocked.

This court has held in numerous cases that whatever is notice enough *to excite attention and put party on his guard* and call for inquiry is notice. Rubendall v. Talla, 190 Okl. 24, 119 P.2d 851, and Fourth National Bank of Tulsa v. Cochran, Okl., 298 P.2d 784.

In the Rubendall case, supra, we quoted with approval from Thomas v. Huddleston, 65 Okl. 177, 164 P. 106, as follows:

"Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led."

We are of the opinion that a communication of facts which lulls the recipient rather than exciting attention or putting on guard is insufficient. This is confirmed by the statement from Corpus Juris and quoted with approval by the California court in Metcalf v. Drew, Cal.App., 177 P.2d 620, wherein the discussion concerning sufficiency of facts to place one upon inquiry says:

"* * * 'The circumstances must be such that the inquiry becomes a duty, and the failure to make it a negligent omission'. There can be no doubt that this is, as appellant says, the true rule. * * *"

There was no such duty when the sole purpose of the information was to assure plaintiff it would be paid. And, again, if the matter had been pursued, it would have been found that there was no mortgage, and that no advancements had been made, nor any assurance that any such ever would be made.

Judgment reversed with directions to enter judgment for plaintiff giving it priority over the mortgage of defendants.

HALLEY, V. C. J., and WELCH, DAVISON, WILLIAMS and BERRY, JJ., concur.

### On Rehearing.

BLACKBIRD, Chief Justice (dissenting).

I cannot concur in the Majority opinion. As I view the opinion, it unjustifiably deprives the defendants, Mr. and Mrs. Will, of the partial recoupment of their losses granted them by a trial court judgment that is neither contrary to law nor to the evidence, and, under all recognized rules of appellate review, is beyond the proper prerogative of this court to reverse.

In this case, defendants' theory was that, although their written real estate mortgage was not executed by W. F. Taylor until August 29, 1956, they had an equitable mortgage antedating that, and arising out of their previous oral agreement with Taylor to deed him the lot and to advance $5000.00 to help in the construction of the house thereon.

The first issue presented in the brief concerning said agreement, and the equitable mortgage, was whether or not it was enforceable under the Statute of Frauds—defendants' argument being that their delivery of the lot's possession to Taylor, not only was the giving of a sufficient consideration to render the agreement a binding contract, and their lien effective from that time on, but also constituted sufficient partial performance to render the contract partially executed and therefore beyond operation of the Statute of Frauds. The trial court's findings and judgment uphold this theory.

In its brief, plaintiff expressly recognizes that Taylor obtained possession of the lot from defendants before it ever furnished any materials for constructing the house;

and—instead of taking issue with defendants over the effective date and priority of their claimed equitable mortgage—plaintiff merely maintains that such mortgage was invalid for want of consideration. In its reply brief, plaintiff says that Collins v. Lackey, 31 Okl. 776, 123 P. 1118, 40 L.R.A., N.S., 883, (which defendants cite in support of their argument) held that payment of the purchase price of land, pursuant to an oral contract of sale, was insufficient to take said contract out of the Statute of Frauds. While it is true that, in the body of its opinion in that case, this court said that such payment *alone* was not sufficient performance to authorize the court to enforce specific performance of such a contract, the holding of the court as reflected by the first paragraph of the syllabus, was that possession " * * * *not* taken in pursuance of the contract, or with the knowledge and consent of the vendor, is insufficient to relieve the contract of the operation of the statute of frauds * * *." (Emphasis mine). In the body of the opinion (as defendants point out) the court further said:

> "The weight of authority, both in England and in this country, however, supports the rule that *possession alone* of land *under* a verbal contract, *when delivered* to the vendee, is sufficient performance to take the case out of the statute of frauds, * * *". (Emphasis mine).

The Annotation at 101 A.L.R. 923, 1003, demonstrates that this statement is correct. Thus it will be seen that plaintiff's argument on appeal fails to demonstrate error in the trial court's judgment to the effect that defendants had an equitable mortgage which antedated plaintiff's materialman's lien.

But the Majority opinion does not deal with the above, or any matter affecting the *validity* of defendants' claimed equitable mortgage. All said opinion deals with is the question of *priority* between the mortgage and plaintiff's lien, and proceeds to decide the matter by taking a view contrary to that of the trial court, on the matter of notice. If defendants' claim that they had

a valid equitable mortgage is correct, then the facts that their written mortgage had not yet been executed, or recorded, at the time plaintiff had notice (or its legal equivalent) of their equitable mortgage, through its agent, Gilbert, is not entitled to the consideration, and importance, on this question of priority, that the Majority opinion appears to give those facts.

The Majority's crucial conclusion that Taylor's *purpose* in informing plaintiff, through its agent Gilbert—before any material was ever purchased from plaintiff— that the defendant Will was furnishing the money to build the house, was controlling on the question of whether that information was sufficient to excite inquiry as to what arrangement, if any, had been made to secure said defendant for said advancement, or loan, of money, is to me, a strange and novel one. It is not supported by authorities cited in the Majority opinion, or any others of which I am aware. The Corpus Juris quotation in Metcalf v. Drew, the California District Court of Appeals case (78 Cal.App.2d 226, 177 P.2d 620) referred to in said opinion, says (immediately before the portion quoted by the Majority):

> "As to what will be a sufficiency of facts to excite inquiry no rule can be very well established. Each case depends upon its own facts and circumstances. * * * It may be premised that the means of knowledge must be available and of such character that a prudent man might be expected to take advantage of them. There must appear in the nature of the case such a connection between the facts discovered and the further facts to be discovered that the former may be said to furnish a reasonable and natural clue to the latter. * * *"

The California opinion also says:

> "At page 411 of the same opinion [West v. Great Western Power Co., 36 Cal.App.2d 403, 97 P.2d 1014], in 36 Cal.App.2d, at page 1019 of 97 P.2d occurs the following language quoted from Northwestern Portland

Cement Co. v. Atlantic P. C. Co., 174 Cal. 308–312, 163 P. 47, particularly applicable to the present case: ' "Whether a party has notice of 'circumstances sufficient to put a prudent man upon inquiry as to a particular fact,' and whether 'by prosecuting such inquiry, he might have learned such fact' (Civ. Code, § 19), are themselves questions of fact to be determined by the jury or the trial court. * * * Findings of ultimate facts are binding upon appeal, not only where there is a direct conflict regarding the probative facts, *but when those facts are fairly susceptible to opposing inferences.*' " (Emphasis mine).

The emphasized portion of the above quotation is the criterion commonly recognized by this court, and other appellate courts, for determining whether the findings of the trier of fact are to be overturned, and it belies the Majority's apparent idea that such a finding, in order to be upheld, must be in accord with: "* * * *all* of the inferences to be drawn * * *" from the evidence. (Emphasis mine).

Conceding that the trial judge, in the present case, might have concluded from the evidence, that plaintiff's agent was not informed, or acquainted—prior to his company's sale of the materials that went into the house—of such facts as would have made it his duty to inquire into the arrangement between Taylor and the defendant Will for the latter's security for repayment of the construction money he had agreed to advance, this does not mean that the evidence was not susceptible of the opposite conclusion. In my opinion, this was a matter on which reasonable minds might well have disagreed; and the trial court's conclusion and judgment cannot be held to be either without competent evidence reasonably tending to support it, nor clearly against the weight of the evidence. Accordingly, that judgment should have been affirmed, instead of reversed, as the Majority opinion has done. For the foregoing reasons, I respectfully dissent to that opinion.